# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CALVIN MCCRAW, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | NO. CIV-16-352-HE |
| | ) | |
| CITY OF OKLAHOMA CITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs filed this action against the City of Oklahoma City ("City") and William Citty, the Oklahoma City police chief, challenging a city ordinance which prohibited certain conduct on public medians within city limits. The City revised the ordinance on November 7, 2017. The revised ordinance[1] prohibits standing, sitting or staying on any portion of a median located within a street or highway open for use by vehicular traffic if the posted speed limit for such street or highway is forty miles per hour or greater.[2] Plaintiffs contend the revised ordinance violates their free speech rights and those of third parties under the First Amendment. They also claim the ordinance is unconstitutionally vague because it fails to give fair warning of what is prohibited,[3] invalidly deprives them of liberty and, as applied, denies plaintiffs who panhandle the equal protection guaranteed

---

[1] *Ordinance No. 25,777("revised ordinance" or "ordinance").*

[2] *There are limited exceptions to the prohibition which will be discussed subsequently.*

[3] *Plaintiffs allege in the second amended complaint that the revised ordinance is void for vagueness both facially and as applied. See Doc. #82, p. 54, ¶169. (References to documents are to the CM/ECF document and page number.) As plaintiffs fail to address their "as applied" vagueness claims in their motion or any of their briefs, the court considers it to be abandoned.*

by the Fourteenth Amendment. Plaintiffs seek both a declaration that the ordinance on its face and as applied to them and third parties violates the First and Fourteenth Amendments and an injunction to keep the ordinance from being enforced.

The parties have filed cross motions for summary judgment, which should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P.56(a). Having considered the motions and supporting documentation, the court concludes plaintiffs' motion should be denied and defendants' motion should be granted as to plaintiffs' void for vagueness claims and their equal protection claims. Material questions of fact on several issues preclude the entry of summary judgment in either plaintiffs' or defendants' favor on the remaining claims.

## Background

Plaintiffs are various individuals who reside in Oklahoma City, a minority political party in Oklahoma and an independent news outlet based in Oklahoma City. They allege they have long engaged in diverse expressive activities on public medians in the metropolitan area ranging from political campaigning and panhandling to news reporting. Plaintiffs filed this lawsuit initially challenging an ordinance the Oklahoma City Council enacted in 2015. Plaintiff contended the ordinance "criminalize[d] 'standing, sitting, or staying' on 'any portion of a median' within city limits virtually 'for any purpose' other than to cross it." First Amended Complaint, Doc. #15, ¶1. The City revised the ordinance in 2017, but plaintiffs maintain the revised version is still unconstitutional.

The revised ordinance provides in pertinent part:

2

§ 32-458. – Standing, sitting, or staying on streets, highways, or certain medians.

   (11) Based on findings (a)(l) through (a)(l0) above, the City Council wishes to enact this section to:

      i. Limit as much as possible the number of individuals sitting, standing or staying in streets or highways that are open for use by motor vehicles; and to further

      ii. Limit as much as possible the number of individuals sitting, standing or staying on medians located in streets or highways with a speed limit of 40 mph or greater that are open for use by motor vehicles; and

   (12) The City Council further finds that, notwithstanding the restriction imposed by this section on the use by individuals of medians located in streets or highways with a speed limit of 40 mph or greater, scores of medians exist throughout the limits of the City that are located in streets or highways with a speed limit of less than 40 mph and all such medians may be available for unrestricted use by individuals.

(b) Intent. This Ordinance is not intended to impermissibly limit an individual's right to exercise free speech. Rather it seeks to impose a regulation that is narrowly tailored to protect pedestrians and drivers alike by imposing a specific place and manner restrictions for certain places where substantial threats of grievous bodily injury or death exist due to vehicular traffic traveling at high speeds.

(c) Except as permitted by Subsection (e) of this section, no individual shall stand, sit, or stay for any purpose in any portion of a street or highway open for use by vehicular traffic.

(d) Except as permitted by Subsection (e) of this section, no individual shall stand, sit, or stay for any purpose on any portion of a median located within a street or highway open for use by vehicular traffic if the posted speed limit for such street or highway is 40 mph or greater; provided, if no speed limit is posted for such street or highway, then for the purpose of applying the restrictions imposed by this subsection, the speed limit of such street or highway shall be presumed to be 25 miles per hour.

(e) Subsections (c) and (d) of this section shall not apply to:

      (1) Individuals using a crosswalk or safety zone to cross from one side of the street or highway to another;

(2) Government law enforcement officers, other government employees, or government contractors or their employees or subcontractors who are present in the street or highway or on the median for the purpose of acting within the scope of governmental authority.
(3) Individuals conducting legally authorized construction or maintenance work, or other legally authorized work, in or on the street, highway, or median; or
(4) Individuals responding to any emergency situation.

(f) Any person who violates the provisions of this section shall, upon conviction, be punished by a fine not to exceed $100.00. No court costs shall be assessed.

Analysis

Plaintiffs' principal claim is that the city ordinance suppresses protected expression in violation of the First Amendment.[4] Material evidentiary issues exist which preclude resolution of that claim on summary judgment. Many underlie legal decisions the court will have to make, which include determining the type of fora where the First Amendment expression was occurring.[5] Fact disputes also exist with respect to plaintiffs' claim that the median ban deprives them of the "'liberty' protected by the Due Process Clause of the Fourteenth Amendment." City of Chicago v. Morales, 527 U.S. 41, 53 & 54 n. 19 (1999). However, the court concludes defendants

---

[4] *"The First Amendment is incorporated into the Fourteenth Amendment and thus applies to the action at issue here." Cutting v. City of Portland, 802 F.3d 79, 81 n.1 (1st Cir. 2015); Taylor v. Roswell Indep. Sch. Dist., 713 F.3d 25, 35 (10th Cir. 2013).*

[5] *The City does not dispute that the revised ordinance "burdens speech and expressive conduct protected by the First Amendment." Doc. #111, p. 24 n.15.*

4

are entitled to summary judgment on plaintiffs' claims that the ordinance is impermissibly vague and that it violates the panhandlers' equal protection rights.

Void for Vagueness

"'[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" United States v. Hunter, 663 F.3d 1136, 1141 (10th Cir. 2011) (quoting United States v. Graham, 305 F.3d 1094, 1105 (10th Cir. 2002)). When considering a vagueness challenge to a penal statute, a court must "begin with 'the presumption that the statute comports with the requirements of federal due process and must be upheld unless satisfied beyond all reasonable doubt that the legislature went beyond the confines of the Constitution.'" Id. (quoting United States v. Welch, 327 F.3d 1081, 1094 (10th Cir.2003)). To be upheld, "[a]ll that is required is that the language conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...." Id. (internal quotation marks omitted).

Plaintiffs argue that the ordinance is "hopelessly vague" because of confusion resulting from the "emergency exception" and the ordinance's reliance on the "posted" speed limit, both of which they assert are "critical to liability under the ban." Doc. #109, p. 44. According to plaintiffs it is unclear what constitutes an emergency under the exception – whether it would "appl[y] to a candidate campaigning in an unexpectedly close election, an activist protesting an unforeseen event, a panhandler soliciting to pay for unexpected medical expenses, a reporter covering a breaking news event, or a jogger

responding to an unanticipated text, call, cramp, or untied shoelace." Doc. # 106, p. 49. However, a straightforward reading of the ordinance – specifically what is prohibited -- in conjunction with the exemption for emergencies demonstrates its purpose and the scope of the exemption. The City is banning people from using certain medians for any purpose other than crossing, unless something out of the ordinary happens, an urgent event that requires them to react. "Emergency" commonly means "[a] serious situation or occurrence that happens unexpectedly and demands immediate action."[6] American Heritage Dictionary 583 (5th ed. 2011). The statute is not vague because it fails to provide specific examples of emergencies because the term has a well-known, accepted definition. A reasonable person of ordinary intelligence would know if he or she was confronting an "emergency situation." *See* Ward v. Rock Against Racism, 491 U.S. 781, 794 (1989) ("perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity"); *see also See* Village of Hoffman Estates v. Flipside, Hoffman

---

[6] *Plaintiffs cite to a portion of the definition of "emergency" found in Article I of the Motor Vehicles and Traffic Chapter of the Oklahoma City Municipal Code. See Doc. #114, p. 9. However, they do not quote the entire definition or note that those definitions do not apply "where the context clearly indicates a different meaning." Okla. City Mun. Code ch.32, art. I, § 32-1 (2018). The code defines "emergency" as "an unforeseeable occurrence of temporary duration causing or resulting in an abnormal increase in traffic volume, cessation or stoppage of traffic movement, or creation of conditions hazardous to normal traffic movement, including fire, storm, accident, riot, or spontaneous assembly of large numbers of pedestrians in such a manner as to impede the flow of traffic." § 32-1(22). The definition pertains to emergencies that impede or affect the flow of traffic. It would not cover emergency situations involving pedestrians on medians, an example of which would be a person injured in an automobile accident who sit or stays on the median until the ambulance arrives. Therefore, it is apparent that the code's definition does not apply to the term "emergency" when it is used in Ordinance 25,777.*

Estates, Inc., , 498-99 (1982) ("The Court has ... expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe."). Nothing more is required. *See generally* Hunter, 663 F.3d at 1141-42 (term "reasonable and prudent," when used in statute proscribing motorists from following other vehicles too closely, incorporated a "comprehensible, normative standard" and was not unconstitutionally vague)

Plaintiffs' other vagueness challenge to the ordinance is based on defense counsel's "suggest[ion] in multiple depositions that if a citizen cannot see the speed limit from their vantage point – even if it might be posted elsewhere – then it is not 'posted' under the Revised Ordinance." Doc. #106, p. 50. Plaintiffs contend that this interpretation of the statute, "under which a median is both outlawed and not outlawed depending on whether a person has seen the posted speed limit – is hardly apparent from the text" and exposes a "critical uncertainty with the line separating legality from criminality that chills speech and invites arbitrary enforcement." *Id.* [7]

The court is not persuaded by plaintiffs' argument or counsels' construction of the ordinance. As defendants point out, plaintiffs do not argue that people do not understand what "posted speed limit for such street or highway is 40 miles per hour or greater" means.

---

[7] *In their response to defendants' motion for summary judgment plaintiffs also essentially assert that the ordinance lacks sufficient standards to enable officers to determine if individuals fall within one of the ordinance's other exemptions – if they are merely using the median to cross the street or highway or are legally authorized to work there. Neither exemption confers unfettered discretion. The distinction between sitting or staying on a median versus merely remaining there long enough to cross a street or highway should be readily apparent to both the ordinary citizen and patrolling officer. And those persons authorized to conduct work on city medians should have and carry with them proper identification.*

Doc. #111, p. 44. Rather, their complaint is that they must "make efforts to conform their activity to the clearly enunciated standards." *Id.* "[T]he general rule that ignorance of the law or a mistake of law is no defense to criminal prosecution is deeply rooted in the American legal system." Commil USA, LLC v. Cisco Systems, Inc., 135 S.Ct. 1920, 1930 (2015) (quoting Cheek v. United States, 498 U.S. 192, 199 (1991)). Pedestrians who seek to stand, sit or stay on a city median which abuts a street with a speed limit of 40 mph or above are no different than drivers who are expected to know the speed limits of the streets they drive. They must determine the speed of the adjacent street.

The court concludes the ordinance language "'conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices.'" Hunter, 663 F.3d at 1142 (quoting Roth v. United States, 354 U.S. 476, 491 (1957)). That is all that is required. *Id. See* Gaudreau, 860 F.2d at 362 ("The Court has consistently held statutes sufficiently certain when they employ words or phrases with 'a well-settled common law meaning, notwithstanding an element of degree in the definition as to which estimates might differ . . . .'") (quoting Connally v. General Construction Co., 269 U.S. 385, 391) (1926)). Defendants' motion for summary judgment will be granted as to plaintiffs' claims that the ordinance is void for vagueness both facially and as applied.

Equal Protection

Plaintiffs allege in their second amended complaint that the revised ordinance was "drawn and enacted based on animus against those who engage in panhandling, and is enforced against panhandling for the same illegitimate reason." Doc. #82, p. 56, ¶178. In their response to defendants' motion, plaintiffs assert they have presented ample evidence

8

that City Council members intended to enact "panhandling/solicitation regulations" and evidence as to whether the revised ordinance is "tainted by unconstitutional 'antipathy,' 'prejudice,' and 'animus' against panhandlers in violation of . . . equal protection." Doc. #109, p. 45

Plaintiffs did not seek summary judgment on their equal protection claim in their own motion and their half-hearted argument in response to defendants' motion fails to demonstrate that a fact or legal question exists as to whether they have an equal protection claim under the circumstances present here. The only cases they cite, Romer v. Evans, 517 U.S. 620 (1996) and City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432 (1985), dealt with legislative classifications, with legislation which, on its face and/or as applied discriminated against specific classes of individuals. The ordinance does not on its face treat two groups differently. While plaintiffs pleaded an as applied equal protection claim. they offer no evidence of differential enforcement. *See generally* Taylor, 713 F.3d at 54 ("To prevail on an equal protection claim, a plaintiff must show that she was treated differently from others who were similarly situated."). Summary judgment is therefore appropriate in defendants' favor on plaintiffs' equal protection claim.

Accordingly, plaintiffs' motion for summary judgment [Doc. #106] is **DENIED**. Defendants' motion of summary judgment [Doc. #98] is **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is granted in defendants' favor on plaintiffs' facial and as applied void for vagueness claims and plaintiffs' equal protection claims.[8]

---

[8] *Judgment on these claims will be entered when the action is concluded with respect to all claim and parties. Fed.R.Civ.P. 54(b).*

Defendants' motion is otherwise denied.[9] The case will proceed to trial before the court on plaintiff's First Amendment free speech claims and their Fourteenth Amendment liberty claims.[10]

**IT IS SO ORDERED.**

Dated this 18th day of June, 2018.

JOE HEATON
CHIEF U.S. DISTRICT JUDGE

---

[9] *This decision moots plaintiffs' motion to strike defendants' Exhibits 32 and 35[Doc. #115]. Those documents pertain to issues which have been reserved for trial. Plaintiffs are not precluded from reurging their objections if defendants move to admit those exhibits at trial.*

[10] *Defendants also sought summary judgment with respect to plaintiff Schindler's First Amendment claim, which is based on his running on medians during the Oklahoma City Memorial Marathon to honor victims of the bombing. They assert the ordinance would not affect him because the roads on the marathon route are closed during the race. Plaintiffs disagree for two reasons. First, they contend some of the streets on the route remain partly open to traffic. Second, they assert that even if the adjacent street is not open for use by vehicles, the ordinance, as written, does not exempt someone from the median ban if the speed on the street is 40 mph or greater unless one of the exemptions in section (e) applies. Therefore, they contend plaintiff Schindler could violate the ban while running the marathon. Plaintiffs have misread section (d), which states that "no individual shall stand . . . on any portion of a median located within a street or highway <u>open for use</u> by vehicular traffic . . . ." Doc. #98-27, p. 4 (emphasis added). While the court is skeptical that the ordinance would be applied to plaintiff Schindler during the race, plaintiffs are technically correct that the ordinance might apply because not all streets are entirely closed. For that reason, defendants are not entitled to summary judgment on his First Amendment claim.*