**CASE NO. CIV-16-352-HE**

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

---

CALVIN McCRAW, G. WAYNE MARSHALL, MARK FAULK, TRISTA
WILSON, NEAL SCHINDLER, OKLAHOMA LIBERTARIAN PARTY, and
RED DIRT REPORT,
*Plaintiffs*
v.

CITY OF OKLAHOMA CITY and WILLIAM CITTY, in his official capacity as
Chief of the Oklahoma City Police Department,
*Defendants*

---

**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
AND NON-TAXABLE LITIGATION EXPENSES
AND BRIEF IN SUPPORT**

---

**Joseph Thai**
P.O. Box 961
Norman, OK 73070
(405) 204-9579
thai@post.harvard.edu

**Micheal Salem**
Salem Law Offices
101 East Gray St., Suite C
Norman, OK 73069
(405) 366-1234
msalem@msalemlaw.com

**Megan E. Lambert**
**Brady Henderson**
ACLU of Oklahoma Foundation
P.O. Box 1626
Oklahoma City, OK 73103
(405) 525-3831
mlambert@acluok.org

**Greg P. Beben**
Legal Aid Services of Oklahoma
2901 North Classen Blvd., Suite 112
Oklahoma City, OK 73106
(405) 488-6825
gregory.beben@laok.org

April 26, 2021

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................. 2

I.   While Challenging The Original Ordinance, Plaintiffs Developed Critical
     Evidence Applicable To Its Mid-Litigation Revision ................................................. 2

II.  Enlarged Briefing Was Granted Due To The "Extensive And Complex" Record
     And The "Complicated" And "Important" Constitutional Issues ............................... 3

III. Plaintiffs Won A Significant First Amendment Ruling That Relied On Their
     Factual Record And Closely Aligned With Their Legal Arguments .......................... 4

ARGUMENT .................................................................................................................. 5

I.   Plaintiffs Are Entitled To Reasonable, Fully Compensatory Attorneys' Fees ............ 5

     A.  Prevailing Civil Rights Plaintiffs Should Recover Attorneys' Fees ................... 5

     B.  Plaintiffs Fully Prevailed ................................................................................. 5

     C.  Awarding Fees In This Case Would Advance Vital Federal Policies ................ 6

     D.  A "Fully Compensatory Fee" Should Encompass "The Litigation As A
         Whole," Including Related Claims On Which Plaintiffs Did Not Prevail .......... 7

II.  Plaintiffs' Requested Fees Are More Than Reasonable .............................................. 8

     A.  The "Lodestar Amount" Sets The Baseline For Reasonable Fees ..................... 8

     B.  The Requested Hourly Rates Fall On The Very Low End Of A
         Reasonable Local Range .................................................................................. 8

     C.  The Hours Requested By Plaintiffs Are More Than Reasonable ..................... 14

         1.  The City's Vigorous Defense—Including Its Revision Of
             The Median Ban And Resulting Reset Of Pre-Trial Litigation—
             Significantly Drove Up Plaintiffs' Fees ................................................. 15

         2.  Plaintiffs Have Significantly Reduced Their Claimed Hours .............. 16

a. *Plaintiffs Primarily Staffed Demanding Tasks With Only One Or Two Attorneys* ..................................................16

b. *Plaintiffs Voluntarily Wrote Off Hundreds Of Hours On Key Tasks With Multiple Attorneys* .................................17

c. *Plaintiffs Are Not Billing For Critical Time-Consuming Work Delegated To Law Students* .........................................18

d. *Plaintiffs Refrained From Designating Their Own Experts*.................................................................................18

e. *Plaintiffs Waived Their Response To The Certiorari Petition* ................................................................................19

f. *Plaintiffs' Attorneys Excluded Routine Tasks And Recorded Time Conservatively* .............................................19

3. Plaintiffs' Attorneys Litigated This Complex And Demanding Case Efficiently And Effectively....................................19

4. Revision Is Vital To Written Advocacy, Especially On Appeal...........22

5. Effective Oral Advocacy Requires "Relentless Preparation" ..............23

6. The Hours Of Defense Counsel Are Probative of Reasonableness ......23

III. Plaintiffs Are Entitled To Reasonable Non-Taxable Litigation Expenses ................24

IV. Plaintiffs Merit A Fee Enhancement For "Exceptional Success" .............................25

CONCLUSION ..........................................................................................25

# TABLE OF AUTHORITIES

*Page(s)*

**CASES:**

*Anchondo v. Anderson, Crenshaw & Assocs., LLC,*
616 F.3d 1098 (10th Cir. 2010) ........................................................................16

*Awad v. Ziriax,*
670 F.3d 1111 (10th Cir. 2012) ........................................................................10

*Awad v. Ziriax,*
No. CIV-10-1186, 2014 WL 1660650 (W.D. Okla. Apr. 25, 2014) ...................11, 16, 22

*Bell v. Little Axe Indep. Sch. Dist. No. 70,*
766 F.2d 1391 (10th Cir. 1985) ........................................................................12

*Bishop v. Smith,*
760 F.3d 1070 (10th Cir. 2014) ...............................................................10, 17, 19, 22

*Bishop v. Smith,*
112 F. Supp.3d 1231 (N.D. Okla. 2015) .............................................11, 16, 19, 20, 21, 22

*Brown v. Gray,*
227 F.3d 1278 (10th Cir. 2000) ........................................................................24

*Case v. Unified Sch. Dist. No. 233,*
667 F.3d 1111 (10th Cir. 2012) ........................................................................9, 24

*Cimarron Alliance Found. v. City of Oklahoma City,*
290 F. Supp.2d 1252 (W.D. Okla. 2002) ..........................................................12

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ..........................................................................................15

*Doe v. City of Albuquerque,*
157 F.3d 1243 (10th Cir. 1998) ........................................................................5

*Evans v. Sandy City,*
944 F.3d 847 (10th Cir. 2019) ..........................................................................25

*Fox v.Vice,*
563 U.S. 826 (2011) ..........................................................................................5

*Green v. Haskell Cnty.*,
568 F.3d 784 (10th Cir. 2009) .......................................................................... 12

*Hensley v. Eckerhart*,
461 U.S. 435 (1983) ...............................................................6, 7, 8, 21, 23, 25

*Indep. Fed. of Flight Attendants v. Zipes*,
491 U.S. 754 (1989) ............................................................................................ 5

*Johnson v. Univ. Coll. of the Univ. of Ala. in Birmingham*,
706 F.2d 1205 (11th Cir. 1983) ........................................................................ 24

*Kennedy v. Louisiana*,
554 U.S. 407 (2008) ......................................................................................... 10

*Love v. Mayor of Cheyenne*,
620 F.2d 235 (10th Cir. 1980) .......................................................................... 14

*Mares v. Credit Bureau of Raton*,
801 F.2d 1197, 1205 (10th Cir. 1986) ............................................................. 14

*McCraw v. City of Oklahoma City*,
973 F.3d 1057 (10th Cir. 2020) ............................................. 1, 2, 3, 4, 5, 8, 25

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ................................................................................ 7, 9, 18

*Ramos v. Lamm*,
713 F.2d 546 (10th Cir. 1983) ...................................................................... 6, 25

*Robinson v. City of Edmond*,
160 F.3d 1275 (10th Cir. 1998) ................................. 5, 6, 7, 8, 9, 12, 16, 23, 24

*Strack v. Continental Resources, Inc.*,
No. 117,276 (Okla. Apr. 20, 2021) .................................................................... 9

**STATUTES AND RULES:**

28 U.S.C. § 1920 ........................................................................................... 1, 5

42 U.S.C. § 1988(b) .............................................................................. 1, 5, 6, 7, 24

Local Rule 54.2 .................................................................................................. 1

**OTHER AUTHORITIES:**

Antonin Scalia & Bryan A. Garner,
*Making Your Case: The Art of Persuading Judges* (2008) ..........................................22, 23

Bryan A. Garner,
*The Elements of Legal Style* (2d ed. 2002) ........................................................................22

John G. Roberts, Jr.,
*Thoughts on Presenting an Effective Oral Argument*, School Law in Review (1997) .....23

William Crum,
*Panhandling Ordinance May Make A Comeback*, The Oklahoman (Apr. 12, 2021) .........6

**EXHIBIT LIST:**

Exhibit 1 – Decl. of Joseph Thai & Attach. A (timesheet)

Exhibit 2 – Decl. of Micheal Salem & Attach. A (timesheet)

Exhibit 3 – Decl. of Brady Henderson & Attach. A (timesheet)

Exhibit 4 – Decl. of Megan Lambert & Attach. A (timesheet)

Exhibit 5 – Decl. of Greg Beben & Attach. A (timesheet)

Exhibit 6 – Decl. of Jimmy Goodman & Attach. A (CV)

Exhibit 7 – Decl. of Michael McBride & Attach. A (CV)

Exhibit 8 – Decl. of James Warner

Exhibit 9 – Decl. of Kurt Rupert

Exhibit 10 – Decl. of Vicki Behenna & Attach. A (CV)

Exhibit 11 – Decl. of Randy Calvert

Exhibit 12 – Decl. of Blake Johnson

Exhibit 13 – Aplts. Br., No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.)

Exhibit 14 – Aples. Br., No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.)

Exhibit 15 – Aplts. Unopp. Mot. For Leave To File Enlarged Br., No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.)

Exhibit 16 – Pet. for Writ of Cert., No. 20-1049, *City of Oklahoma City v. McCraw*

Exhibit 17 – Pls. Mot. for Attorneys' Fees & Timesheets, No. 04-CV-848-TCK-TLW, *Bishop v. Smith* (N.D. Okla.)

Exhibit 18 – *Strack v. Continental Resources, Inc.*, Case No. 117,276 (Apr. 20, 2021) (slip op.)

Exhibit 19 – Professional Services Retainer Agreement between City of Oklahoma City and Catherine Campbell & Memorandum (March 14, 2017)

Exhibit 20 – Amendment No. 4 to Professional Services Retainer Agreement between City of Oklahoma City and Catherine Campbell & Memorandum (Jan. 21, 2020)

Exhibit 21 – Itemization of Non-Taxable Expenses & Attach. A-F (receipts)

Exhibit 22 – William Crum, *Panhandling Ordinance May Make A Comeback*, The Oklahoman A4 (Apr. 12, 2021)

**INTRODUCTION**

In April 2016, Plaintiffs filed suit to challenge the constitutionality of Oklahoma City Ordinance 25,777 ("Revised Ordinance"), which criminalized standing, sitting, or staying on more than 400 medians across the municipality. In August 2020, the Tenth Circuit held that the law violated the First Amendment. *See McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1080 (10th Cir. 2020). Based on the extensive factual record developed by Plaintiffs, and closely aligning with their legal arguments that medians are traditional public fora and that the law failed every prong of intermediate scrutiny, the Tenth Circuit found the City had "utterly failed" to justify its ordinance. *Id.* at 1077.

Pursuant to 42 U.S.C. § 1988(b), 28 U.S.C. § 1920, and Local Civil Rule 54.2, Plaintiffs move for a fully compensatory award of reasonable attorneys' fees and non-taxable expenses. Those fees and expenses arose from five years of hard-fought litigation—including, as a result of the City's mid-litigation revision of its median ban, a reset of the scheduling order at the City's request over Plaintiffs' objections. That reset opened the door to the City's designation of two additional defense "experts" (out of three), nine additional depositions (out of ten), two additional *Daubert* motions (out of three), and another set of dispositive motions (dismissal and summary judgment). Furthermore, the City sought or acceded to significantly enlarged briefing on summary judgment and appeal due to the "important," "extensive," and "complex" nature of this case.

Consistent with congressional policy, this Court's fee award should encourage other skilled attorneys to dedicate years of work, if necessary, toward vindicating precious constitutional rights and deter the City from violating those rights of citizens in the future.

## BACKGROUND

I.   **While Challenging The Original Ordinance, Plaintiffs Developed Critical Evidence Applicable To Its Mid-Litigation Revision.**

In December 2015, the City of Oklahoma City enacted Ordinance No. 25,283 ("Original Ordinance"), which prohibited standing, sitting, or staying on medians less than thirty feet wide within two hundred feet of an intersection. After Plaintiffs filed this lawsuit in April 2016, discovery and dispositive motions followed. Plaintiffs developed critical facts that informed later rulings on the Revised Ordinance, such as the speech-friendly characteristics of medians across Oklahoma City, including many outlawed by the Revised Ordinance;[1] their longstanding, diverse, and safe uses for speech;[2] most of the legislative history of "troubling evidence of animus" against panhandlers, *McCraw*, 973 F.3d at 1070 n. 8;[3] and years of automobile accident records from the City, which Plaintiffs analyzed and summarized.[4] Plaintiffs also deposed the City's sole "expert" at the time, Police Chief William Citty, whose deposition both sides relied on at trial and on appeal.[5]

In November 2017, after this Court denied summary judgment on the Original Ordinance, the City revised it to apply to all medians in streets with a speed limit of forty miles per hour or more. Over Plaintiffs' opposition, the City requested and this Court

---

[1] *See McCraw*, 973 F.3d at 1062, 1068-70; Ex. 13, Aplts. Br. at 4-5, No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.). Appellants' brief cites the appendix on appeal (App.), which is available for this Court's reference (scanned and found virus-free) at https://www.dropbox.com/sh/h602538ignr6tvm/AABcj24Tk6IyCVSs14qzRD_Ua?dl=0.
[2] *See McCraw*, 973 F.3d at 1064-65, 1068-70; Ex. 13, Aplts. Br. at 5-12.
[3] *See McCraw*, 973 F.3d at 1062; Ex. 13, Aplts. Br. at 12-17.
[4] *See McCraw*, 973 F.3d at 1064, 1072-77; Ex. 13, Aplts. Br. at 20-22.
[5] *See* App. 1972-1983, 2582-2721; Ex. 13, Aplts. Br. at 8, 13, 25; Ex. 14, Aples. Br. at 3, 5-7, 11, 14, 24, 36, 38-39, No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.).

granted a new scheduling order, which opened a second round of discovery, witness designations, depositions, and dispositive motions.[6] That revision and reset led directly to the City filing another motion to dismiss, designating two additional "experts" whom Plaintiffs deposed and against whom they filed *Daubert* motions, the City deposing six Plaintiffs, and the parties filing a second round of cross-motions for summary judgment.[7]

In November 2018, this Court held a two-day bench trial with eight live witnesses, seven witnesses by deposition designations, and over 1000 pages of exhibits.[8]

The trial, this Court's post-trial ruling, appellate briefing and oral argument, and the Tenth Circuit's opinion all featured the critical evidence developed before the adoption of the Revised Ordinance as well as evidence developed afterwards.[9]

## II.  Enlarged Briefing Was Granted Due To The "Extensive And Complex" Record And The "Complicated" And "Important" Constitutional Issues.

In successfully seeking enlargement of summary judgment briefing—from 30 to 40 pages each—the parties jointly cited "the complicated nature of the legal arguments being put forth, the number of parties asserting an interest as Plaintiffs in this action, and the number of experts designated by Defendants." Dkt. No. 95 at 2. Likewise, the Tenth Circuit

---

[6] *See* Dkt. No. 78 at 2, 5, 9; Dkt. No. 79 at 3-4; Dkt. No. 80; Dkt. No. 81.

[7] *See* Dkt. Nos. 83, 87-89, 98, 102, 104, 109, 112, 114; Dkt. No. 106 & its Exs. 2-3, 5-10. This Court declined to certify the City's "experts" as such. *See* Ex. 13, Aplts. Br. at 29.

[8] Dkt. Nos. 162, 165-167.

[9] *See supra* nn. 1-8 and accompanying text; *see also* Dkt. No. 165  (Plaintiffs' exhibits 1, 6, 7, 10, 12-20, 25, 31-32, 36-40 based on pre-revision evidence); Dkt. 166 (Defendants' exhibits 2-3, 12, 15, 17, 24-25, 30, 32, 35 based on pre-revision evidence); Dkt. No. 180 at 2-5, 11-16, 19, 22-23, 26 (references in this Court's post-trial ruling to pre-revision evidence); *McCraw*, 973 F.3d at 1062-63, 1072 n. 12, 1074 (references in Tenth Circuit opinion to pre-revision evidence); Oral Arg., *McCraw v. City of Oklahoma City*, No. 19-6008, *available at* https://www.ca10.uscourts.gov/oralarguments/19/19-6008.MP3.

granted enlargement of the main appellate briefs from 13,000 to 16,000 words because of "the important constitutional issues," the "extensive and complex" record, the "factually different circumstances" of each Plaintiff, the "complicated and relevant legislative history," and over 5500 pages of appendices. Ex. 15, Aplts. Unopp. Mot. for Leave to File Enlarged Br. at 1-3, No. 19-6008, *McCraw v. City of Oklahoma City* (10th Cir.).

### III. Plaintiffs Won A Significant First Amendment Ruling That Relied On Their Factual Record And Closely Aligned With Their Legal Arguments.

The Tenth Circuit's First Amendment ruling "critically" relied on Plaintiffs' factual record regarding the longstanding and safe uses of medians for expressive activities. *Id.* at 1072; *see id.* at 1062-77. That ruling closely aligned with Plaintiffs' legal arguments that the median ban failed not just one, but every prong of intermediate scrutiny. *Compare McCraw*, 973 F.3d at 1065-77, *with* Ex. 13, Aplts. Br. at 31-68.

The significance of Plaintiffs' success extends well beyond the invalidation of the Revised Ordinance. For one, the Tenth Circuit recognized medians circuit-wide as traditional public fora. Furthermore, in agreement with Plaintiffs, the Tenth Circuit established that intermediate scrutiny in public fora is rigorous, requiring the government to prove that "the recited harms are real," based on "concrete" and "impersonal hard evidence"; that there is "a close fit between ends and means"; that the government "seriously undertook to address the problem with less intrusive tools readily available to it" and "demonstrate that alternative measures that burden substantially less speech would fail"; and that "not only must there be *ample* alternative channels" for speakers to reach their audience, but "those channels must also be adequate" based on "record evidence."

*McCraw*, 973 F.3d at 1071-72 & n. 11, 1074-75, 1077-79 (quotation marks omitted). Indeed, in its petition for certiorari, the City itself credited Plaintiffs' win with establishing a "newly announced evidence standard" higher than prior Tenth Circuit precedent and First Amendment law in other circuits. Ex. 16, Pet. for Writ of Cert. at 6, No. 20-1049, *City of Oklahoma City v. McCraw*; *see id.* at 6-21.

## ARGUMENT

I.     **Plaintiffs Are Entitled To Reasonable, Fully Compensatory Attorneys' Fees.**

A.     **Prevailing Civil Rights Plaintiffs Should Recover Attorneys' Fees.**

The Civil Rights Attorney's Fees Award Act of 1976 provides that plaintiffs who have vindicated their constitutional rights "should ordinarily recover an attorney's fee from the defendant" and other litigation costs. *Fox v. Vice*, 563 U.S. 826, 833 (2011) (quotation marks omitted); *see* 42 U.S.C. § 1988(b); 28 U.S.C. § 1920; *Indep. Fed. of Flight Attendants v. Zipes*, 491 U.S. 754, 759–61 (1989) ("a district court not merely 'may' but *must* award fees to the prevailing plaintiff"); *Robinson v. City of Edmond*, 160 F.3d 1275, 1280 (10th Cir. 1998) (same). The award reimburses the plaintiff as a "private attorney general, vindicating a policy that Congress considered of the highest priority," safeguarding civil rights. *Fox*, 563 U.S. at 833. It also "holds to account a violator of federal law" to deter future misconduct. *Fox*, 563 U.S. at 833 (quotation marks omitted).

B.     **Plaintiffs Fully Prevailed.**

The Tenth Circuit facially invalidated the Revised Ordinance for violating the First Amendment. *See McCraw*, 973 F.3d at 1065-80; Ex. 13, Aplts. Br. 36-68. Thus, the law "can no longer be constitutionally applied to anyone," *Doe v. City of Albuquerque*, 667

F.3d 1111, 1127 (10th Cir. 2012), and this Court enjoined its enforcement. Dkt. No. 197. Therefore, Plaintiffs "secured all the relief they requested." *Robinson*, 160 F.3d at 1285 n. 10; *see Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("The result is what matters").

Consistent with Plaintiffs' status as prevailing parties, the Tenth Circuit granted appeal-related attorneys' fees and remanded for a determination of a reasonable amount. Dkt. No. 198. The circuit also awarded appeal-related costs. Dkt. No. 199.

### C.      Awarding Fees In <u>This Case</u> Would Advance Vital Federal Policies.

A fee award would encourage skilled attorneys to dedicate years, if necessary, to vindicating federal civil rights in future cases. *See Robinson*, 160 F.3d at 1281.

Moreover, there is no doubt a fee award is necessary to deter the City from again violating the Constitution. After all, it was <u>not</u> violating the rights of citizens that the City's top lawyer advised to be a "downside of adopting additional panhandling/soliciting regulations that could be unconstitutional." App. 3605. It was that "the ACLU (or some other civil rights attorneys)" might sue, and "[i]f such a lawsuit were filed and was decided against the City, the City and its ad valorem taxpayers would be forced to pay the ACLU's attorney fees." *Id.* Indeed, deterrence is paramount, as a councilmember who supported the unconstitutional ordinance is proposing yet another revision. *See* Ex. 22, William Crum, *Panhandling Ordinance May Make A Comeback*, The Oklahoman A4 (Apr. 12, 2021).

Of course, a fee award should not be reduced simply because it will come from public funds, as doing so would frustrate the vital congressional policies of § 1988. *See Ramos v. Lamm*, 713 F.2d 546, 552 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council For Clean Air*, 483 U.S. 711, 725 (1987)).

**D.     A "Fully Compensatory Fee" Should Encompass "The Litigation As A Whole," Including Related Claims On Which Plaintiffs Did Not Prevail.**

A reasonable fee under § 1988 is "a fully compensatory fee, comparable to what is traditional with attorneys compensated by a fee-paying client." *Missouri v. Jenkins*, 491 U.S. 274, 286 (1989) (quotation marks and citations omitted).

Furthermore, "a fully compensatory fee," especially where "a plaintiff has obtained excellent results," "should not be reduced simply because the plaintiff failed to prevail on every contention." *Hensley*, 461 U.S. at 435; *accord Robinson*, 160 F.3d at 1282-84. "Litigants in good faith may raise alternative legal grounds," and the "rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley*, 461 U.S. at 435; *see Robinson*, 160 F.3d at 1283 ("it is inappropriate for a district court to evaluate individual claims as though they were discrete," as "[l]itigants should be given breathing room to raise alternative legal grounds without fear that merely raising an alternative theory will threaten the attorney's subsequent compensation"). "The <u>result</u> is what matters." *Hensley*, 461 U.S. at 435 (emphasis added); *accord Robinson*, 160 F.3d at 1284.

Thus, Plaintiffs' litigation of their freedom of movement and vagueness claims should not result in a fee reduction. Those claims arose from a "common core of facts" regarding the longstanding safe uses of medians for speech and related activities, as well as the burden imposed by the bans. *Robinson*, 160 F.3d at 1282-83 (given successful Establishment Clause claim, finding "legally indefensible" the exclusion of hours on unsuccessful Free Exercise, individual-capacity liability, and actual damages claims).

Plaintiffs' litigation against the Original Ordinance and Revised Ordinance also

developed around a "common core of facts" and "related legal theories." *Robinson*, 160 F.3d at 1283. That entitles Plaintiffs to fees that "encompass all hours reasonably expended" on "the litigation as a whole." *Hensley*, 461 U.S. at 435. The common factual core included speech-friendly characteristics of medians, their longstanding expressive uses, the legislative history of animus against panhandling, and the safety and accident record.[10] The legal theories against both versions of the ban were also "closely linked"— both severely burdened speech in public fora (including many of the same medians) and both failed every prong of intermediate scrutiny. *Robinson*, 160 F.3d at 1283.

The City itself claims to have "narrowed the [original] ban" to bolster its constitutionality. Ex. 14, Aples. Br. at 43; *see id.* at 14. That claim underscores that the revision was part of a continuous legislative and litigation course of conduct. The Tenth Circuit, too, treated the entire case history as integral to its decision and relied on the common factual core developed by Plaintiffs. *See McCraw*, 973 F.3d at 1061-80.

## II.     Plaintiffs' Requested Fees Are More Than Reasonable.

### A.     The "Lodestar Amount" Sets The Baseline For Reasonable Fees.

The base amount of a reasonable fee is the so-called "lodestar amount," which is "the product of the number of attorney hours reasonably expended and a reasonable hourly rate." *Robinson*, 160 F.3d at 1281; *see Hensley*, 461 U.S. at 433.

### B.     The Requested Hourly Rates Fall On The Very Low End Of A Reasonable Local Range.

"The first step in setting a rate of compensation for the hours reasonably expended

---

[10] *See supra* nn. 1-5, 9 and accompanying text.

is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1256 (10th Cir. 1998). Moreover, the hourly rates must account for what is necessary to attract skilled counsel to complex litigation of this kind. They must bear the costs of litigation as well as ongoing professional and personal expenses, and forgo opportunities for immediate paying work, with only the prospect of a contingent fee after potentially years of labor, and then only for time related to prevailing claims. *See* Goodman Decl. ¶¶ 10-11, 21-23; McBride Decl. ¶ 38, 41-45, 51-54; Rupert Decl. ¶ 12; *cf. Robinson*, 160 F.3d at 1281 ("[I]f a court's compensation is not adequate to match what the market will bear for a lawyer's services, then competent lawyers will go elsewhere…. Such a result would do irreparable damage to our system of private enforcement of federal civil rights."). Indeed, to compensate for years of delay in payment, courts should use "current rather than historic hourly rates." *Jenkins*, 491 U.S. at 284.

As attested by seven attorneys with decades of experience with complex federal litigation and current knowledge of local hourly rates, the requested rates for Plaintiffs' attorneys fall on the very low end of reasonable local ranges for lawyers of comparable experience, expertise, and skill. *Compare* Ex. 18, *Strack v. Continental Resources, Inc.*, Case No. 117,276, at ¶ 23 & n. 10 (Okla. Apr. 20, 2021) (slip op.) (approving average rate of <u>$790 an hour</u> over seven years of litigation, based on evidence of "standard rate" in "local community" ranging from $550 to $900 for "highly specialized" oil and gas class action counsel); *with* McBride Decl. ¶ 50 (stating "the complexity of this litigation requires counsel even more specialized and rare than oil and gas class action lawyers" in *Strack*).

The City, in short, is getting a sizable discount on the hourly rates.

    1.    **Joseph Thai.** Prof. Thai is a graduate of Harvard College (1995) and Harvard Law School (1998), a former law clerk to Justices White and Stevens of the Supreme Court and Judge Ebel of the Tenth Circuit, and the Watson Centennial Chair and Presidential Professor at the University of Oklahoma College of Law. Thai Decl. ¶¶ 1-3. For two decades, he has taught, published, and lectured extensively on constitutional law, First Amendment, the Supreme Court, and appellate advocacy. *Id.* ¶¶ 6-8. He is recognized nationally as an expert in those areas and locally as "the state's top expert" or "one of the very top legal experts" in them, as well as a highly skilled civil rights and appellate litigator. Behenna Decl. ¶ 7; McBride Decl. ¶ 35.A ; *see* Thai Decl. ¶¶ 7-9, 11, 16; Calvert Decl. ¶ 9; Goodman Decl. ¶ 16.A; Rupert Decl. ¶ 7; Warner Decl. ¶ 17.

    Before joining academia, Prof. Thai practiced fulltime for five years in federal and state courts and agencies. Thai Decl. ¶¶ 4-5. While a professor, he has often engaged in pro bono litigation and consultation in his areas of expertise at the trial and appellate levels. *Id.* ¶¶ 13-16. Among the Oklahoma cases he has litigated are *Bishop v. Smith*, 760 F.3d 1070 (10th Cir. 2014), which invalidated Oklahoma's constitutional amendment banning same-sex marriage, and *Awad v. Ziriax*, 670 F.3d 1111 (10th Cir. 2012), which led to the invalidation of Oklahoma's constitutional amendment banning "Sharia Law." *Id.* ¶ 15. At the national level, Prof. Thai has regularly served as amicus with other constitutional law or First Amendment experts before the Supreme Court and circuit courts. *Id.* ¶ 16. In *Kennedy v. Louisiana*, 554 U.S. 407 (2008), the Supreme Court cited his amicus brief to support its prohibition of the death penalty for non-homicide crimes. *Id.* ¶ 15.

Six years ago, in *Bishop*, Judge Kern found Prof. Thai's then-requested rate of $400 an hour reasonable, declaring that "Thai's expertise in the Fourteenth Amendment and appellate advocacy rendered him uniquely qualified." *Bishop v. Smith*, 112 F. Supp.3d 1231, 1252 (N.D. Okla. 2015); *see* Thai Decl. ¶ 31. Six years ago, Judge Miles-LaGrange also found his then-requested rate of $400 an hour reasonable. *See Awad v. Ziriax*, No. CIV-10-1186, 2014 WL 1660650, at *2 (W.D. Okla. Apr. 25, 2014); Thai Decl. ¶ 32.

In local cases in recent years through the present, in state and federal courts at all levels, Prof. Thai has been paid his current rate of $500 an hour. Thai Decl. ¶¶ 13-14; Behenna ¶¶ 5-6; Rupert Decl. ¶¶ 8-9.

Hence, Prof. Thai's rate of <u>$500 an hour</u> as lead counsel is "at least comparable with attorneys with similar top-level qualifications, experience, and skill" and "more than reasonable given his unique abilities and the complex federal constitutional questions involved." Rupert Decl. ¶ 10; Warner Decl. ¶ 18. Indeed, much higher rates would be reasonable. Behenna Decl. ¶ 9 ($500 is "well below the regional average for lawyers with his background and experience"); Calvert Decl. ¶¶ 6, 10 ("An attorney with Prof. Joseph Thai's expertise should charge between $700 and $900 per hour"); Goodman Decl. ¶ 16.A ($500 to $650 is "the appropriate hourly range"); McBride Decl. ¶ 35.A ($500 to $675 is "appropriate range" locally; $500 is "*far* below the reasonable spectrum for someone of his experience and skill at a regional and national level").

2.    **Micheal Salem.** A graduate of the University of Oklahoma (1971) and OU Law (1975), Mr. Salem has earned a reputation as a "highly experienced and skilled" civil rights attorney. Goodman Decl. ¶ 16.B; McBride Decl. ¶ 35.B. He has litigated many

complex, unpopular civil rights cases from trial through appeal and received many awards, including two Courageous Advocacy Awards from the OBA. Salem Decl. ¶¶ 9, 14-15.

Mr. Salem has won many significant First Amendment cases in Oklahoma, including *Awad* with Prof. Thai; *Green v. Haskell Cnty.*, 568 F.3d 784 (10th Cir. 2009) (removal of Ten Commandments monument from courthouse lawn); *Cimarron Alliance Found. v. City of Oklahoma City*, 290 F. Supp.2d 1252 (W.D. Okla. 2002) (successful challenge to exclusion of pride parade banners from city utility poles); *Robinson v. City of Edmond*, 68 F.3d 1226 (10th Cir. 1995) (removal of cross from city seal); and *Bell v. Little Axe Indep. Sch. Dist. No. 70*, 766 F.2d 1391 (10th Cir. 1985) (successful challenge to elementary-school religious practice); *see* Salem Decl. ¶¶ 14-15 (listing cases).

Mr. Salem's rate of <u>$400 an hour</u> for his pivotal roles, from sharing primary responsibility with Prof. Thai for trial preparation and strategy, to serving as first chair at trial and second chair on appeal, is "at the low end of an appropriate hourly rate." Goodman Decl. ¶ 16.B. Indeed, it "should be much higher, given his many decades of experience and history of success." McBride Decl. ¶ 35.B ($450 to $650 is "appropriate range").

**3.     Brady Henderson.** A graduate of the University of Oklahoma (2003) and OU Law (2006), Mr. Henderson was Legal Director of ACLU of Oklahoma from 2012 to 2018, and before then an Assistant District Attorney for Oklahoma District 21. Henderson Decl. ¶¶ 2, 9. He now practices civil rights and related litigation in Milwaukee. *Id.* ¶ 1.

Mr. Henderson has litigated numerous cases from trial through appeal in state and federal courts. *Id.* ¶ 10. At ACLU, he litigated many civil rights actions, including First Amendment cases. *Id.* ¶ 2. He has also taught, lectured, and commented in local and

national media as an expert on constitutional law and free speech. *Id.* ¶ 11.

Mr. Henderson's rate of $300 an hour for his key roles in this case, from helping craft legal theories to examining witnesses at depositions and trial, *id.* ¶ 3, is at "the low end" of a reasonable range. Goodman Decl. ¶ 16.C ($300 to $350 is "appropriate range"); McBride Decl. ¶ 35.C ($300 to $385 is "appropriate range").

4.     **Megan Lambert.** A graduate of the University of Oklahoma (2014) and OU Law (2017), Ms. Lambert received the Gallogly Public Interest Fellowship to work as a Legal Fellow at ACLU-OK from 2017 to 2019. Lambert Decl. ¶¶ 2-3. She has since served as a staff attorney there, focusing on First Amendment and criminal justice reform. *Id.* ¶ 4.

For Ms. Lambert's significant contributions to research, writing, document preparation and review, and legal argument and strategy, $200 an hour is at "the low end" of a reasonable range. Goodman Decl. ¶ 16.E ($200 to $250 is "appropriate range"); McBride Decl. ¶ 35.E ($200 to $235 is "appropriate range"); Johnson Decl. ¶ 13.

5.     **Greg Beben.** A graduate of Cameron University (2006) and OU Law (2009), Mr. Beben has since worked as a staff attorney with Legal Aid Services of Oklahoma. Beben Decl. ¶¶ 2, 4. He has represented impoverished clients in a wide variety of cases to increase their access to income and housing and protect their civil rights. *Id.* ¶¶ 4-5. He has served on several local boards and committees devoted to alleviating homelessness, including the Homeless Youth Alliance, the Oklahoma City Mayor's Task Force on Homelessness, and the Governor's Interagency Council on Homelessness. *Id.* ¶ 6.

Mr. Beben's specialized knowledge of those experiencing homelessness, their speech on medians, and how the challenged laws impacted them informed the factual and

legal narratives central to Plaintiffs' case. *Id.* ¶ 7. He represented Mr. McCraw and Mr. Marshall throughout this case and had the primary attorney relationship with them. His rate of <u>$250 an hour</u> is at "the low end" of a reasonable range. Goodman Decl. ¶ 16.D ($250 to $325 is "appropriate range"); McBride Decl. ¶ 35.D ($250 to $295 is "appropriate range").

### C.     The Hours Requested By Plaintiffs Are More Than Reasonable.

Table 1 totals the hours claimed by Plaintiffs thus far and, multiplied by hourly rates, arrives at the lodestar amount.[11] As explained below, those hours accrued in substantial part because of the City's vigorous litigation tactics and reflect significant reductions by Plaintiffs in their exercise of billing judgment. The total fee of $1,223,100, before any enhancement, is more than reasonable. McBride Decl. ¶¶ 58-76; Goodman Decl. ¶¶ 24-37.

| TABLE 1: LODESTAR AMOUNT | | | |
|---|---|---|---|
| **Attorney** | **Hourly Rate** | **Number of Hours**[12] | **Value of Hours** |
| **Joseph Thai** (lead counsel) | $500 | 1,599 | $799,500 |
| **Micheal Salem** (trial first chair, appeal second chair) | $400 | 527.6 | $211,040 |
| **Brady Henderson** (ACLU-OK) | $300 | 277.5 | $83,250 |
| **Megan Lambert** (ACLU-OK) | $200 | 463.8 | $92,760 |
| **Greg Beben** (Legal Aid-OK) | $250 | 146.2 | $36,550 |
| **Loadstar Amount** | | **3014.1** | **$1,223,100** |

[11] These hours are current through April 23, 2021, except for Mr. Salem, whose hours are current through March 1, 2021. Plaintiffs reserve the right to supplement this application with fees and other costs subsequently incurred, including for settlement discussions and further fee litigation. *See Love v. Mayor of Cheyenne*, 620 F.2d 235, 237 (10th Cir. 1980) ("Plaintiff is also entitled to attorney's fees . . . for work done in resolving the fee issue"); *accord Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1205 (10th Cir. 1986).

[12] Beben Decl. ¶ 9; Henderson Decl. ¶ 19; Lambert Decl. ¶ 10; Salem Decl. ¶ 26; Thai Decl. ¶ 34.

1.    **The City's Vigorous Defense—Including Its Revision Of The Median Ban And Resulting Reset Of Pre-Trial Litigation—Significantly Drove Up Plaintiffs' Fees.**

As noted, more than two and a half years into litigation, the City revised its challenged median ban and obtained a new scheduling order resetting discovery and witness designations over Plaintiffs' objections. *See supra* pp. 2-3. That opened a second round of discovery and directly led to the designation of two more defense "experts," nine additional depositions, two additional *Daubert* motions, another motion to dismiss, and another round of cross-motions for summary judgment. Consequently, the mid-litigation revision and reset contributed at least 705.4 in hours and $258,815 in fees on Plaintiffs' side for work associated with the above tasks—not counting how the revision and reset expanded and complicated the case going forward from trial through appeal.[13]

Furthermore, the City's designation of no less than three "experts" necessitated three depositions, three *Daubert* motions, and cross-examination of the third at trial, incurring at least 330 in hours and $109,410 in fees on Plaintiffs' side—again not counting how testimony from all three enlarged and complicated the case thereafter.[14]

As the Supreme Court admonished, "[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n. 11 (1986) (plurality). Likewise, "[t]he

---

[13] Beben ¶ 9 (40.1 hours); Henderson Decl. ¶ 20 (77.6 hours); Lambert Decl. ¶ 10 (227.8 hours); Thai Decl. ¶ 34 (359.9 hours). These hours exclude time Mr. Salem spent preparing for and cross-examining MSGT Fowler at trial.

[14] Henderson Decl. ¶ 20 (58.1 hours); Lambert Decl. ¶ 10 (138 hours); Salem ¶ 26 (25.7 hours); Thai Decl. ¶ 34 (108.2 hours).

Tenth Circuit has long accepted the proposition that one of the factors useful in evaluating the reasonableness of the hours in a fee request is the response necessitated by the maneuvering of the other side." *Robinson*, 160 F.3d at 1284 (quotation marks omitted).

### 2. Plaintiffs Have Significantly Reduced Their Claimed Hours.

Plaintiffs have exercised reasonable billing judgment in many significant ways, lowering their overall requested fee by at least hundreds of billable hours.

### a. *Plaintiffs Primarily Staffed Demanding Tasks With Only One Or Two Attorneys.*

The Tenth Circuit has approved fees for multiple attorneys on a legal team provided they are "being compensated for the distinct contribution of each lawyer." *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1105 (10th Cir. 2010) (quotation marks omitted). Accordingly, in *Awad*, Judge Miles-LaGrange awarded "the full amount of attorney fees" requested by a legal team of seven attorneys, including fees for "six or fewer" attorneys "reviewing, editing, and submitting comments" on dispositive briefs. *Awad*, 2014 WL 1660650 at *2. And in *Bishop*, Judge Kern awarded most of the hours claimed by three attorneys for brief writing, preparing for argument, and attending argument in the Tenth Circuit. *See Bishop*, 112 F. Supp.3d at 1252.

By Defendants' own acknowledgment, this case was extensive and complex. *See supra* pp. 3-4. Michael McBride of Crowe & Dunlevy attests that, "in comparably complex and significant civil litigation," his law firm has used three primary counsel and as many as six other attorneys. McBride Decl. ¶ 33. Jimmy Goodman of the same firm attests that law firms usually assign "three or more attorneys" to "complex civil litigation in federal

court, such as constitutional civil rights litigation." Goodman Decl. ¶ 24.

Nevertheless, for the most complex and demanding tasks, lead counsel Prof. Thai either assumed primary responsibility by himself—drafting the enlarged summary judgment brief and enlarged Tenth Circuit opening brief and preparing for appellate argument—or shared primary responsibility with Mr. Salem, who joined the team to prepare for and serve as first chair at trial. By leveraging Prof. Thai's experience and expertise on the First Amendment and appellate litigation, and Mr. Salem's deep trial experience, Plaintiffs leanly and smartly staffed the most significant tasks of this case.

> **b.** ***Plaintiffs Voluntarily Wrote Off Hundreds Of Hours On Key Tasks With Multiple Attorneys.***

When multiple attorneys were involved, Plaintiffs have reduced the hours claimed to two or three billing attorneys for the depositions of ten witnesses; attendance and assistance at two days of trial; travel, attendance, and assistance at appellate argument; and weekly team calls to confer over pending litigation matters and strategy. The City itself staffed depositions, trial, and oral argument with two attorneys. *Cf. Bishop*, 112 F.3d at 1248 (awarding fees for three attorneys to attend appellate argument).

Thus, although Ms. Lambert assisted at all depositions, trial, and oral argument, and participated in weekly team calls, she wrote off her time for those tasks, totaling <u>111.7 hours</u> or nearly a quarter of her claimed 463.8 hours. Lambert Decl. ¶ 9. Mr. Beben wrote off similar tasks with multiple attorneys, discounting <u>97.4 hours</u> or more than half of his claimed 146.2 hours. Beben Decl. ¶ 9. Mr. Salem also wrote off most weekly calls, totaling over 20 hours. Salem ¶ 27. These write-offs alone saved <u>at least $54,690</u> in fees.

Team calls to confer over pending matters and strategy are "a regular and essential part of litigation, especially in complex cases," "may actually decrease overall billing" through "critical collaboration," and typically are charged by firms "for each lawyer involved." Goodman ¶ 37; McBride ¶ 76.

### c. Plaintiffs Are Not Billing For Critical Time-Consuming Work Delegated To Law Students.

Half a dozen legal interns and volunteer law students devoted hundreds of hours to critical time-consuming tasks that contributed to Plaintiffs' success. For example, under attorney supervision, one or more students initially reviewed and coded nearly 6000 pages in accident records obtained in discovery; compiled key trial exhibits summarizing the location, causes, and other characteristics of those accidents; compiled and verified in-person the trial exhibit listing medians outlawed by the Revised Ordinance; prepared the exhibit reducing the number of "legal" medians listed by the City; photographed medians, bus stops, and other roadway features, which became trial exhibits; and testified at trial regarding some of those exhibits. Thai Decl. ¶ 21. Both this Court's post-trial ruling and the Tenth Circuit's opinion relied on this key evidence. *See supra* pp. 2-3.

By delegating these time-intensive tasks, Plaintiffs saved hundreds of billable attorney hours. Furthermore, Plaintiffs are not seeking fees for this work, which is at least comparable to the recoverable fees of paralegals. *See Jenkins*, 491 U.S. at 284-86, 288; Goodman Decl. ¶ 39; *see also* McBride Decl. ¶ 78 (Crowe paralegals bill $155 to $275/hr).

### d. Plaintiffs Refrained From Designating Their Own Experts.

Though it would have been reasonable for Plaintiffs to have designated experts to

counter the City's three, Plaintiffs refrained, thereby limiting its own fees and costs as well as the City's by a significant sum. *See supra* p. 15 (high litigation cost of City's experts).

### e.    *Plaintiffs Waived Their Response To The Certiorari Petition.*

Plaintiffs waived their right to respond to the City's certiorari petition. The Supreme Court denied it, and Plaintiffs saved tens of thousands in litigation costs. McBride Decl. ¶ 67 (response fees and costs "could range between $40,000 to $75,000" (emphasis added)); *cf. Bishop*, 112 F. Supp.3d at 1244, 1252 (over $48,045 in fees for certiorari response, excluded due to "limited success," as response supported certiorari, which was denied).

### f.    *Plaintiffs' Attorneys Excluded Routine Tasks And Recorded Time Conservatively.*

Plaintiffs' attorneys attest to having excluded numerous tasks, such as emails and phone calls with co-counsel. For example, Prof. Thai attests he only included emails and calls that were lengthy or especially important. Thai Decl. ¶ 19. Further, Prof. Thai attests to having frequently reduced his time by 10 to 20 percent, saving hundreds of hours over years of litigation. Thai Decl. ¶ 20; McBride Decl. ¶ 74 (stating "if Professor Thai were billing for my firm, I likely would have advised against this conservative billing practice as short-changing the value of his time … particularly given the rarity and specialization of his constitutional law expertise"). Similarly, as his timesheet reflects, Mr. Salem discounted almost every entry. Salem Decl. Attach. A; McBride Decl. ¶ 73 (again advising against "discount[ing] that much reasonable time").

### 3.    **Plaintiffs' Attorneys Litigated This Complex And Demanding Case Efficiently And Effectively.**

Plaintiffs' legal team efficiently divided their work on this complex and demanding

case. *First*, the team relied primarily on lead counsel, Prof. Thai, who leveraged his expertise, experience, and skill with First Amendment law and civil rights litigation to craft Plaintiffs' legal strategy, develop their factual bases and constitutional arguments, draft their pleadings and dispositive motions, and brief and argue their appeal.

*Second*, because Prof. Thai worked fulltime as a law professor throughout this litigation, he could not sacrifice more nights and weekends than necessary from family and other obligations, and he made the most of that limited time. Thai Decl. ¶ 25. Indeed, all declarants who have worked with Prof. Thai on other cases have attested to the high efficiency and quality of his work. *See* Behenna Decl. ¶ 10 (stating "how efficiently and strategically Professor Thai works"); Calvert Decl. ¶ 7 ("Professor Thai's work product exceeded that of every other constitutional lawyer I have worked with or against," and he was "very efficient"); Rupert Decl. ¶ 11 ("Professor Thai is extremely efficient" and "his work product was outstanding"); Warner Decl. ¶ 20 ("Professor Thai dedicated nights and weekends outside of his day job as a law professor," "did not waste time on unnecessary tasks," and produced "one of the best written and argued appellate briefs that I have read"). As Judge Kern concluded in *Bishop*, Prof. Thai's "legal acumen and appellate experience resulted in time savings." 112 F. Supp.3d at 1249 (emphasis added).

*Third*, numerous time-intensive tasks, including preparing for and deposing certain witnesses, briefing certain issues and motions, preparing certain trial exhibits and witnesses, and compiling the extensive appellate appendix, were handled by other attorneys at lesser billing rates, or legal interns and law students for whose extensive work Plaintiffs are not seeking fees. Thai Decl. ¶¶ 21-22; *see supra* p. 18.

*Fourth*, as their time records document, the primary responsibilities for trial preparation were undertaken by two members of Plaintiffs' legal team—Prof. Thai and Mr. Salem. Combined, their expertise ensured the development of a strong factual record and preservation of legal arguments for a successful appeal.

*Fifth*, on appeal, most of the work claimed in this fee application were performed by Prof. Thai, who briefed and argued the appeal, and Mr. Salem, who helped select and prepare the extensive appendix, assisted with research and revisions of the enlarged brief and preparation for argument, and served as second chair.

| TABLE 2: TENTH CIRCUIT HOURS[15] | |
|---|---|
| **Attorney** | **Number of Hours** |
| **Joseph Thai** | 449.9 |
| **Micheal Salem** | 122.2 |
| **Brady Henderson** | 8.5 |
| **Megan Lambert** | 48.4 |
| **Greg Beben** | 13.8 |
| **TOTAL** | **642.8** |

The 642.8 total hours compares favorably to the 813 total hours awarded by Judge Kern for the three-attorney team's Tenth Circuit work in *Bishop. See Bishop*, 112 F. Supp.3d at 1239, 1252.[16] Moreover, given the "excellent results" obtained by Plaintiffs' legal team on appeal, the time was well spent. *Hensley*, 461 U.S. at 435; *see supra* pp. 4-5.

---

[15] Beben ¶ 9; Henderson Decl. ¶ 20; Lambert Decl. ¶ 10; Salem Decl. ¶ 26; Thai Decl. ¶ 34.

[16] Deducting from the hundreds of hours claimed by the *Bishop* plaintiffs for their Tenth Circuit appeal the small number of hours disallowed by Judge Kern for that work (e.g., for certain tasks related to amicus briefs) nets 813.4 awarded hours. *Compare* Ex. 17, Pls. Mot. for Attorneys' Fees & Timesheets, No. 04-CV-848-TCK-TLW, *Bishop v. Smith* (N.D. Okla.), *with Bishop*, 112 F. Supp.3d at 1239-53.

### 4.    Revision Is Vital To Written Advocacy, Especially On Appeal.

The City may seek to discount the time that lead counsel devoted to revising Plaintiffs' briefs, including the critical enlarged brief on appeal. For starters, it should be noted that the City itself agreed to enlarged briefing given the "important," "extensive," and "complex" nature of the case. *See supra* pp. 3-4. Furthermore, failing to revise briefs would defy expert advice on effective written advocacy. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 80 (2008) (effective appellate writing requires one to "[s]it down and write. Then revise. Then revise again. Finally, revise.").[17] District courts have thus rejected such arguments. *See Bishop*, 112 F. Supp.3d at 1247 ("Finalizing and proofing a complex appellate brief addressing numerous constitutional issues," "drafting the table of contents and authorities," and "[a]ccurate numbering, citations, and ordering of arguments can positively affect the overall impact of a brief, particularly at the appellate level," so "attention to these types of details by Thai is reasonable, particularly for a lengthy and complex appellate brief"); *Awad*, No. CIV-10-1186, 2014 WL 1660650, at *2 (refusing to discount "ten revisions of a brief," as given "the complex issues briefed, the Court finds that the multiple revisions were not only reasonable but an example of good brief writing practices" (emphasis added)).

Likewise, co-counsel reviewing drafts with fresh eyes and ideas is essential for appellate briefs that will be read critically by at least three judges and their law clerks.

---

[17] Justice Brandeis, who often reworked opinions 15 to 20 times, stated that "[t]here is no such thing as good writing. There is only good rewriting." Bryan A. Garner, *The Elements of Legal Style* 218 (2d ed. 2002).

### 5.      Effective Oral Advocacy Requires "Relentless Preparation."

Prof. Thai dedicated 140.8 hours to preparing for oral argument—anticipating and answering hundreds of possible questions about the extensive factual record, this Court's rulings, every legal argument advanced by Plaintiffs, and all counterpoints, whether argued by the City, imagined as a devil's advocate, or asked at moot arguments. Thai. Decl. ¶ 34. This reasonable work is highly recommended by appellate experts. *See* Scalia & Garner at 150 ("The most difficult element of oral argument is the unexpected . . . It means preparing for hundreds of different questions even though you may be asked only 20."); *id.* (skepticism about importance of "20 minutes or half an hour of oral argument" has "proved false in every study of judicial behavior that we know"); John G. Roberts, Jr., *Thoughts on Presenting an Effective Oral Argument*, School Law in Review 6 (1997) ("In this era of abbreviated argument times and prepared, active judges, the advocate must be flexible … The only way to develop the necessary flexibility is relentless preparation—at the end of the day, that remains the one overriding key to presenting an effective oral argument.").

### 6.      The Hours Of Defense Counsel Are Probative of Reasonableness.

"[T]he vigor which the opponents bring to the dispute" is a factor in assessing the reasonableness of fees. *Robinson*, 160 F.3d at 1284. Thus, if the City contends that Plaintiffs dedicated too much time to winning this case, and the City does not submit its time records for comparison, then this Court should greet the claim with great skepticism.

Unlike Defendants, Plaintiffs have refrained from issuing subpoenas for billing records to avoid turning their fee request into "a second major litigation." *Hensley*, 461 U.S. at 437; *see* Dkt. No. 201 to Dkt. No. 205. Nevertheless, what is known from the City's

public records is that it has paid around $250,000 to its outside counsel at $300 an hour.[18]

Therefore, the City's <u>second</u> chair at trial and on appeal—who only entered the case <u>more</u> <u>than a year after its commencement</u>, Dkt. No. 41—has billed over 800 hours so far.[19] This "effort expended by the [City's secondary counsel] suggests at least that [the City] viewed the case as sufficiently complex and serious to warrant the expenditure of large amounts of attorney time, and it highlights the tooth-and-nail approach the city used in this case" that demanded far more work from Plaintiffs' legal team. *Robinson*, 160 F.3d at 1284.[20]

Finally, Plaintiffs' legal team had the <u>tougher task</u> on appeal of urging reversal. McBride ¶ 56. Plaintiffs hard work yielded a robust win.

## III.    Plaintiffs Are Entitled To Reasonable Non-Taxable Litigation Expenses.

As part of their § 1988(b) fee award, Plaintiffs are entitled to reimbursement of non-taxable expenses that "are usually billed in addition to the attorney's hourly rate." *Case*, 157 F.3d at 1257. Those expenses, itemized in Exhibit 21, total $2676.56 and are ordinarily billed to paying clients. Goodman Decl. ¶ 38; McBride ¶ 77; Salem ¶ 31. Further, if any expenses in Plaintiffs' Bill of Costs are denied as taxable costs, Plaintiffs request that they be included in the fee award. *See Brown v. Gray*, 227 F.3d 1278, 1297-98 (10th Cir. 2000).

---

[18] *See* Ex. 19 (retainer agreement between City and outside counsel and memorandum); Ex. 20 (amendment to retainer agreement and memorandum).

[19] If these public documents are inaccurate, the City can rebut them with its billing records.

[20] "The evidence of the hours expended by defense counsel is not, of course, an immutable yardstick." *Robinson*, 160 F.3d at 1284. "The amount of hours that is needed by one side to prepare adequately may differ substantially from that for opposing counsel, since the nature of the work may vary dramatically," as the case had "far greater precedential value" to Plaintiffs, whose First Amendment rights were at stake, and Plaintiffs' legal team had to develop facts and claims for seven Plaintiffs. *Johnson v. Univ. Coll. of the Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983).

**IV.    Plaintiffs Merit A Fee Enhancement For "Exceptional Success."**

While the lodestar sets the base of a reasonable fee, an enhancement is warranted for "exceptional success," *Hensley*, 461 U.S. at 435, including the "establishment of significant new law." *Ramos*, 713 F.2d at 557. Here, Plaintiffs achieved "exceptional success" in obtaining circuit-wide recognition of medians as traditional public fora and—as the City itself argued—establishing rigorous intermediate scrutiny in those fora. *See supra* pp. 4-5. On the merits, Plaintiffs obtained a unanimous ruling from the Tenth Circuit that the City had "utterly failed" to justify its ordinance, even in the face of recent Tenth Circuit precedent upholding a median ban. *McCraw*, 973 F.3d at 1077; *see id.* at 1073, 1077-79 (distinguishing *Evans v. Sandy City*, 944 F.3d 847 (10th Cir. 2019)).

An enhancement of 10 percent is warranted for the thousands of skilled hours Plaintiffs' legal team poured into vindicating the free speech rights of Oklahoma City residents. McBride ¶ 35, 37-39, 43-57 (supporting "modest enhancement" of 10 percent, as hourly rates could be "much higher" at trial level and "far" higher at appellate level, and given "hard and complex" issues, "unpopularity" of panhandling, "superior performance," and "significant success" in obtaining reversal and establishing robust precedent); Goodman ¶¶ 10-12, 17, 20, 40 (same). In short, "'reasonable fees'" do not suffice to "attract worthy and skilled counsel" to "arduous, challenging, and lengthy" cases in which to serve as "a 'private attorney general' to vindicate constitutional rights." McBride ¶ 51-52.

## CONCLUSION

Plaintiffs request $1,223,100 in reasonable attorneys' fees, plus an enhancement of 10 percent for exceptional success. Plaintiffs request $2,676.56 in non-taxable expenses.

Respectfully submitted,

*s/ Joseph Thai*
Joseph Thai, OBA No. 19377
P.O. Box 961
Norman, OK 73070
(405) 204-9579
thai@post.harvard.edu

*s/ Micheal Salem*
Micheal Salem, OBA No. 7876
Salem Law Offices
101 East Gray St., Suite C
Norman, OK 73069
(405) 366-1234
msalem@msalemlaw.com

*s/ Megan Lambert*
Megan Lambert, OBA No. 33216
ACLU of Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org

*s/ Brady Henderson*
Brady R. Henderson, OBA No. 21212
Cream City Law, LLC
1123 N. Water St., Suite 400
Milwaukee, WI 53202
(414) 563-7453
brady@creamcity.law

*Attorneys for all Plaintiffs*

*s/ Greg Beben*
Greg P. Beben, OBA No. 22487
Legal Aid Services of Oklahoma, Inc.
2901 N. Classen Blvd., Suite 112
Oklahoma City, OK 73106
(405) 488-6821

gregory.beben@laok.org

*Attorney for Plaintiffs*
*Calvin McCraw & G. Wayne Marshall*

**Certificate of Electronic Service**

I certify that, on the day of filing, the foregoing document was electronically transmitted through this Court's ECF filing system to all counsel who have entered an appearance in this case and registered to receive ECF notification via electronic mail.

*s/ Joseph Thai*
Joseph Thai, OBA No. 19377