## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

CALVIN MCCRAW,                    )
G. WAYNE MARSHALL,     )
MARK FAULK,                 )
TRISTA WILSON,          )
NEAL SCHINDLER,       )
OKLAHOMA LIBERTARIAN PARTY, )
RED DIRT REPORT,       )
                              )
       Plaintiffs,          )    Case No. CIV-16-0352-HE
                              )
CITY OF OKLAHOMA CITY, an    )
Oklahoma municipal corporation,   )
WILLIAM CITTY, in his official capacity as )
CHIEF OF THE OKLAHOMA CITY  )
POLICE DEPARTMENT,      )
                              )
       Defendants.      )

---

## DEFENDANTS' CITY OF OKLAHOMA CITY AND WILLIAM CITTY'S RESPONSE TO MOTION FOR ATTORNEY FEES

---

Amanda Brown Carpenter, No. 20965
Assistant Municipal Counselor
Suite 400
200 North Walker
Oklahoma City, OK 73102
Telephone:   (405) 297-2451
Facsimile:   (405) 316-3846
Amanda.Carpenter@okc.gov

Catherine L. Campbell, No. 14689
Phillips Murrah P.C.
Corporate Tower / Thirteenth Floor
101 North Robinson Avenue
Oklahoma City, OK 73102
Telephone:   (405) 235-4100
Facsimile:   (405) 235-4133
clcampbell@phillipsmurrah.c

## <u>TABLE OF CONTENTS</u>

I.      BACKGROUND ................................................................................................1-3

II.     ARGUMENTS ................................................................................................3-24

        A.     Legal Standard.................................................................................3-4

        B.     Hourly Rates.....................................................................................4-7

        C.     Attorney Billed Time.........................................................................7-22

                1.      General Considerations ....................................................7-9

                2.      Mr. Beben .........................................................................9-12

                3.      Ms. Lambert .....................................................................12-15

                4.      Mr. Henderson...................................................................15-17

                5.      Mr. Salem  .........................................................................17-20

                6.      Mr. Thai.............................................................................20-22

        D.     Plaintiffs Are Not Entitled to An Enhancement.....................................22-24

# TABLE OF AUTHORITIES

## Cases:

*Anchondo v. Anderson, Crenshaw & Assocs.*,
   616 F.3d 1098 (10th Cir. 2010) ......................................................................... 9, 23

*Animal Legal Defense Fund v. Kelly*,
   No. 18-2657-KHV, 2020 WL 4000905 (D. Kan. July 15, 2020).......................... 23

*Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*,
   919 F.2d 374 (5th Cir. 1990) ............................................................................... 4

*Bell v. United Princeton Props., Inc.*,
   884 F.2d 713 (3d Cir. 1989) ................................................................................ 21

*Bishop v. Smith*,
   112 F. Supp. 3d 1231 (N.D. Okla. 2015) .............................................................. 6

*Blum v. Stenson*,
   465 U.S. 886 (1984) ............................................................................................ 23

*Bramlett v. Med. Protective Co.*,
   No. 3:09-CV-1596-D, 2010 WL 3294248 (N.D. Tex. Aug. 20, 2010)................. 11

*Busby v. City of Tulsa*,
   No. 11-CV-447-JED-JFJ, 2018 WL 7286180 (N.D. Okla. Oct. 23, 2018)............. 6

*Case v. Unified Sch. Dist. No. 233*,
   157 F.3d 1243 (10th Cir. 1998) ............................................................................ 3

*Catholic Benefits Association LCA v. Azar*,
   CIV-14-240-R, 2018 WL 3876615 (W.D. Okla. Aug. 15, 2018) .................. 4-5, 23

*Chris Ctr. of Divine Philosophy, Inc. v. Elam*,
   No. CIV-16-65-D, 2017 WL 4204029 (W.D. Okla. Sep. 21, 2017) ................. 5, 14

*Deboard v. Sunshine Min. & Ref. Co.*,
   208 F.3d 1228 (10th Cir. 2000) ............................................................................ 8

*Desena v. Lepage*,
   847 F. Supp. 2d 207 (D. Me. 2012) ..................................................................... 15

*Doe v. City of Albuquerque*,
    667 F.3d 1111 (10th Cir. 2012) ............................................................................. 9

*Grynberg v. Ivanhoe Energy, Inc.*,
    No. 08-CV-02528-WDM-BNB, 2011 WL 3294351 (D. Colo. Aug. 1, 2011) ..... 4-5

*Guckenberger v. Boston Univ.*,
    8 F. Supp. 2d 91 (D. Mass. 1998) ......................................................................... 7

*Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*,
    295 F.3d 1065 (10th Cir. 2002) ............................................................................ 4

*Hartford Life & Accident Ins. Co. v. Jones-Atchison*,
    CIV-17-654-D, 2018 WL 1750741 (W.D. Okla. Apr. 11, 2018) ........................... 6

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ....................................................................................... 3, 11

*H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*,
    No. 12-CV-531-GKF-PJC, 2015 WL 1954462 (N.D. Okla. Apr. 29, 2015) ......... 11

*H&S Equip., Inc. v. Devon Energy Prod. Co., L.P.*,
    No. CIV-15-1244-HE, 2017 WL 5760122 (W.D. Okla. Oct. 10, 2017) ............... 22

*Jane L. v. Bangerter*,
    61 F.3d 1505 (10th Cir. 1995) .............................................................................. 3

*Johnson v. Ga. Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974) ................................................................. 7, 13, 22, 23

*MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*,
    No. CIV-06-1345, 2010 WL 3824196 (W.D. Okla. Sep. 28, 2010) ....................... 7

*McCrary v. Country Mut. Ins. Co.*,
    No. 13-CV-507-JED-PJC, 2016 WL 8118183 (N.D. Okla. June 22, 2016),
    *report and recommendation adopted*,
    2016 WL 8115369 (N.D. Okla. July 8, 2016) ...................................................... 11

*N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*,
    72 F.3d 830 (10th Cir. 1996) ............................................................................. 3-4, 8

*Perdue v. Kenney A. ex rel. Winn*,
    559 U.S. 542 (2010) ........................................................................................ 3, 23-24

*Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*,
   478 U.S. 546 (1986) ............................................................................................. 23

*Ramos v. Lamm*,
   713 F.2d 546 (10th Cir. 1983),
   *overruled on other grounds by*
   *Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*,
   483 U.S. 711 (1987) ......................................................................................... 4, 24

*Robinson v. City of Edmond*,
   160 F.3d 1275 (10th Cir. 1998) ............................................................................. 11

*Robinson v. Fetterman*,
   387 F. Supp. 2d 432 (E.D. Pa. 2005) .................................................................... 21

*Role Models Am., Inc. v. Brownlee*,
   353 F.3d 962 (D.C. Cir. 2004) .............................................................................. 11

*Sinajini v. Bd. of Educ.*,
   53 F. App'x 31 (10th Cir. 2002) .............................................................................. 8

*Steffens v. Steffens*,
   No. 99-1253, 2000 WL 702390 (10th Cir. May 26, 2000) ...................................... 8

*Tabb v. Mentor Protection Serv. LLC*,
   No. CIV-17-1130-D, 2018 WL 5269828 (W.D. Okla. Oct. 23, 2018) ................5-6

*Thomas v. Crush Enters., Inc.*,
   No. CIV-16-773-W, 2017 WL 10379251 (W.D. Okla. Nov. 14, 2017) .................. 6

*United State ex rel. Pittman v. LXE Counseling, LLC*,
   No. CIV-13-1129-R, 2017 WL 486947 (W.D. Okla. Feb. 6, 2017) ....................... 5

*United States ex rel. Thompson v. Walgreen Co.*,
   621 F. Supp. 2d 710 (D. Minn. 2009) ................................................................... 10

*Ursic v. Bethlehem Mines*,
   719 F.2d 670 (3d Cir. 1983) .................................................................................. 21

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
   9 F.3d 849 (10th Cir. 1993) .................................................................................. 22

*Zinna v. Congrove*,
  680 F.3d 1236(10th Cir. 2012) ................................................................................. 22

## **Statutes:**

42 U.S.C. § 1988(b) .............................................................................................................. 3

COME NOW the Defendants, City of Oklahoma City and William Citty, in his official capacity as Chief of the Oklahoma City Police Department, pursuant to the Court's April 8, 2021 Order [Doc. 210], and respectfully submit their Response to Plaintiffs' Motion for Attorney Fees and Non-Taxable Expenses, and state:

## I.      BACKGROUND

Plaintiffs brought suit against Defendants, City of Oklahoma City and William Citty (together "the City"), challenging an ordinance – Ordinance 25-283 – which prohibited standing, sitting or staying on any portion of a median less than 30-feet wide if less than 200 feet from the intersection except if for certain public uses (trails, parks, benches). Plaintiffs complained that the ordinance placed nearly every median in the City off-limits for expressive purposes. Additionally, Plaintiffs asserted that the City created the ordinance, not to advance public safety, but to ban panhandling. According to Plaintiffs, the ordinance's exceptions – use of medians dedicated in some way to public use – was unrelated to any safety rationale. Thus, the Original Ordinance was overbroad, vague, and not narrowly tailored to the stated government purpose – public safety. The Court denied both parties' Motions for Summary Judgment without prejudice to re-urging the arguments after conducting discovery.

The City continued to research the dangers associated with activities in the medians. Subsequently, the City Council enacted a revised ordinance – Ordinance 25-777 – which prohibited any person from sitting, standing, or staying in a median if the roadway abutting that median has a speed limit of 40 mph or greater. Plaintiffs amended their complaint to challenge the revised ordinance on the same bases as they had challenged the

original ordinance. Specifically, Plaintiffs argued that the revised ordinance: (1) violated their First Amendment rights; and (2) violated their Fourteenth Amendment rights because it was unconstitutionally vague and deprived them of liberty and equal protection. The Court granted the City's motion to dismiss Plaintiffs' challenge to the original ordinance as moot.

The Court denied the parties' cross motions for summary judgment concluding that "material evidentiary issues exist" including what type of fora Oklahoma medians are. Moreover, the Court noted that the facts were disputed whether the revised ordinance deprived Plaintiffs of their liberty interests. However, the Court granted the City's motion on Plaintiffs' claims that the revised ordinance was impermissibly vague and that it violated Plaintiffs' equal protection rights.

After a bench trial, the Court determined that a substantial number of medians were traditional pubic fora and, concluding that the revised ordinance was content-neutral, applied intermediate scrutiny to determine whether the revised ordinance was sufficiently narrowly tailored. Determining that it was, the Court noted the revised ordinance was directed to the most dangerous medians where pedestrians were exposed to the greatest risk. The Court likewise determined that the revised ordinance left open sufficient alternatives for communication. Finally, the Court rejected Plaintiffs' claim that the revised ordinance deprived them of a liberty interest protected by the Fourteenth Amendment.

On appeal, the Tenth Circuit reversed the Court's judgment on Plaintiffs' First Amendment Claims and determined that the Court erred in dismissing Plaintiff Wilson's First Amendment claims. The appellate court otherwise affirmed the Court on Plaintiffs'

challenge that the revised ordinance was impermissibly vague, and that it violated Plaintiffs' Fourteenth Amendment rights.

The Unites States Supreme Court denied the City's Petition for Certiorari. Thus, Plaintiffs are the prevailing parties with regard to their First Amendment claims.

## II.    ARGUMENTS

### A.    Legal Standard

Under 42 U.S.C. § 1988(b), the Court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee in any action or proceeding to enforce a provision of section[] 1983." A "reasonable fee" under § 1988(b) is one that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case," but does not "produce windfalls to attorneys." *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 552 (2010). "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1254 (10th Cir. 1998).

The starting point is the lodestar – a reasonable number of hours multiplied by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 430 n. 3 (1983). Plaintiffs bear the burden of "documenting the appropriate hours expended," *Hensley*, 461 U.S. at 4327, and "prov[ing] ... the reasonableness of each dollar, each hour, above zero." *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). To satisfy the burden, Plaintiffs' contemporaneous time records must show the time allotted to each specific task. *Case*, 157 F.3d at 1250. Services that are excessive, redundant, inefficient, or unnecessary are not compensable. *Hensley*, 461 U.S. at 434. And, courts must "give particular attention to the

3

possibility of duplication." *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co., Inc.*, 72 F.3d 830, 835 (10th Cir. 1996). *See also Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds by Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*, 483 U.S. 711 (1987)).

### B.   Hourly Rates

A reasonable rate is the prevailing market rate in the relevant community. *Guides, Ltd. v. Yarmouth Group Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002); *Blum v. Stenson*, 465 U.S. 886, 896 (1984) (noting that the prevailing market rate applies to both private and nonprofit counsel). To determine "the prevailing market rate," a court may properly consider hourly rates set in other cases as well as affidavits regarding the reasonableness of suggested rates. *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). Additionally, the Court may rely on its own knowledge to establish the rate. *Guides, Ltd.*, 295 F.3d at 1078.

In *Catholic Benefits Association LCA v. Azar*, CIV-14-240-R, 2018 WL 3876615 (W.D. Okla. Aug. 15, 2018), plaintiff, as had others nationwide, challenged the contraceptive mandate in the Affordable Care Act. The Court ultimately permanently enjoined enforcement of the mandate. Plaintiff's counsel requested approximately $3M in fees, for fifteen attorneys' 6,001.3 hours of work. Plaintiff claimed that hourly rates for attorneys ranging from $335-$610 and $250 for paralegals was reasonable.

In addressing the issue, the court noted, "'[a] client may choose the Cadillac of law firm representation,' but that client 'is not automatically entitled to have an opposing party make the car payments.'" *Id.* at *11 (quoting *Grynberg v. Ivanhoe Energy, Inc.*, No. 08-

CV-02528-WDM-BNB, 2011 WL 3294351, at *6 (D. Colo. Aug. 1, 2011)). The court observed that the comparators offered by Government did not account for the complexity of the case – plaintiffs faced standing issues and regulatory changes – and concluded that a local law firm "would not have been similarly equipped to handle such a contentious religious liberties dispute implicating over a thousand employers." *Id*. Notwithstanding, even increasing the rate to account for the complexity and attorney quality, the "requested rates remain beyond the scope of reasonableness in Oklahoma City." *Id*. Consequently, the court concluded that a reasonable rate for a specialized, 38-year attorney was $470 per hour instead of $610 per hour, and the rate for a similarly specialized 18-year lawyer was $360 per hour instead of $510 per hour. *Id*. at *12.

Other cases in Oklahoma federal courts offer satisfactory comparisons:

- *Chris Ctr. of Divine Philosophy, Inc. v. Elam*, No. CIV-16-65-D, 2017 WL 4204029, at *4 (W.D. Okla. Sep. 21, 2017) (in a copyright case, the court concluded that a rate of $275 per hour for an attorney with 27 years of experience, a rate of $240-$250 per hour for an attorney with 14 years of experience, a rate of $200-$210 per hour for an attorney with 5 years of experience was reasonable);

- *United State ex rel. Pittman v. LXE Counseling, LLC*, No. CIV-13-1129-R, 2017 WL 486947, at *1 (W.D. Okla. Feb. 6, 2017) (in a qui tam False Claims Act case, the court rejected a request for $600 per hour);

- *Tabb v. Mentor Protection Serv. LLC*, No. CIV-17-1130-D, 2018 WL 5269828, at *3 (W.D. Okla. Oct. 23, 2018) (in FLSA collective action case, which the court

commented was complex, the court concluded that $400 per hour and $350 per hour appropriate);

- *Bishop v. Smith*, 112 F. Supp. 3d 1231, 1252 (N.D. Okla. 2015) (noting that Mr. Thai's expertise in the Fourteenth Amendment and appellate advocacy rendered him uniquely qualified to assist on an appeal of same-sex marriage ban, the court concluded that $400 per hour was a reasonable rate);

- *Thomas v. Crush Enters., Inc.*, No. CIV-16-773-W, 2017 WL 10379251, at *4 (W.D. Okla. Nov. 14, 2017) (in an employment discrimination case, awarding defendant's 9-year McAfee lawyer $285 per hour, and because there was no evidence regarding additional associates' education and experience, denying an award of $235 per hour and awarding $150 per hour based on the Court's "own knowledge");

- *Hartford Life & Accident Ins. Co. v. Jones-Atchison*, CIV-17-654-D, 2018 WL 1750741, at *3 (W.D. Okla. Apr. 11, 2018) (concluding in a case involving interpleader of insurance proceeds, that $305 per hour for a 10-year attorney and $200 for a younger associate was reasonable); and

- *Busby v. City of Tulsa*, No. 11-CV-447-JED-JFJ, 2018 WL 7286180, at **3-4 (N.D. Okla. Oct. 23, 2018) (in a case alleging racial discrimination in employment and violation of the Fourteenth Amendment, the court determined that $350-400 per hour for civil rights attorneys with over 40 years of practice was reasonable, and that $300 per hour for 17-year litigator with extensive experience in civil rights was reasonable).

6

Also for comparison, the City's outside counsel billed at $300 per hour from 2017 to 2019. *See* Declaration of Catherine L. Campbell attached as Exhibit 1. Counsel has been in practice since 1991, specializing in appellate practice. *Id*. And, although not a constitutional law professor or former Supreme Court law clerk, counsel clerked at the Tenth Circuit. *Id*. Likewise, Plaintiffs' trial counsel, Mr. Salem, graduated from law school in 1975 and over his 44 years of practice has gained extensive experience in civil rights and constitutional law. He seeks $400 per hour. With all due deference to Mr. Thai's expertise and accomplishments, his $500 hourly rate is higher than that charged in Oklahoma City for similar work.

### C.     Attorney Billed Time

#### 1.     General Considerations

"Just as there can be too many cooks in the kitchen, there can be too many lawyers on a case." *MCC Mgmt. of Naples, Inc. v. Int'l Bancshares Corp.*, No. CIV-06-1345, 2010 WL 3824196, at * (W.D. Okla. Sep. 28, 2010) (quoting *Guckenberger v. Boston Univ.*, 8 F. Supp. 2d 91, 101 (D. Mass. 1998) (noting "redundancy in the plaintiffs' attorney structure," and "excessive telephone calls and conferences")). "If more than one attorney is involved, the possibility of duplication of effort along with the proper utilization of time should be scrutinized." *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717 (5th Cir. 1974).

The City recognizes that the case required more than one attorney since it utilized two counsel. However, a review of Plaintiffs' fee request demonstrates a marked failure of Plaintiffs' litigation team to divide and conquer. Comparing Mr. Thai's billing records with

everyone else's, it is clear that Mr. Thai fully participated in practically every task necessary to litigate the case. Although he did not, in the main, present witnesses for deposition, depose witnesses, and he did not or present witnesses at trial, he nonetheless billed time for being present. Mr. Henderson participated along with Mr. Thai on most tasks until Mr. Salem substituted for Mr. Henderson and continued the practice of participating along with Mr. Thai on most tasks. Mr. Beben and Ms. Lambert likewise participated in multiple meetings, conferences, depositions, and the trial despite the fact that they were not engaged in any compensable task other than attendance and strategizing.

Courts must consider multiple attorney conferences may result in excessive calls or conferences. *N.M. Citizens for Clean Water*, 72 F.3d at 835. Moreover, "if the same task is performed by more than one lawyer, multiple compensation should be denied." *Ramos*, 713 F.2d at 554. *See, e.g., Sinajini v. Bd. of Educ.*, 53 F. App'x 31, 35 (10th Cir. 2002) (upholding one-third reduction because of "excessive, unnecessary, and duplicative time spent in meetings and conferences"); *Steffens v. Steffens*, No. 99-1253, 2000 WL 702390, at *6 (10th Cir. May 26, 2000) (court did not abuse discretion by reducing award to account for "excessive time for intraoffice and interoffice conferences, discussions and meetings," which "reflected a significant duplication of effort"); *Deboard v. Sunshine Min. & Ref. Co.*, 208 F.3d 1228, 1245 (10th Cir. 2000) (upholding fee reduction where plaintiffs "chose to employ [multiple] attorneys, even though the case did not warrant that many attorneys," and counsel spent an unreasonable amount of time conferring).

Mr. Thai was the lead attorney on the case managing it and overseeing all aspects of it. Notwithstanding, when he divided work assignments, it appears he was nearly always

assigned himself along with another member (or often, all other members) of the trial team. While "[t]here is nothing inherently unreasonable about a client having multiple attorneys," they all are entitled to compensation only "if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Anchondo v. Anderson, Crenshaw & Assocs.*, 616 F.3d 1098, 1105 (10th Cir. 2010). Counsel's billing records is replete with instances in which many, if not all of them, were present. Additionally, even assuming that the number is culled back to a reasonable two counsel, it is not reasonable for both counsel to bill for the same tasks.

### 2.    Mr. Beben

Mr. Beben seeks compensation for 146.2 hours. *See* Plaintiffs' Exhibit 5, Attachment A. Although Mr. Beben had first client contact with several Plaintiffs, given the nature of the case, there was no need for his active participation in the case. Plaintiffs mounted a facial challenge to the revised ordinance claiming that the terms of the ordinance "measured against the relevant constitutional doctrine, and independent of the constitutionality of particular applications, contain[] a constitutional infirmity that invalidates the [ordinance] in its entirety." *Doe v. City of Albuquerque*, 667 F.3d 1111, 1127 (10th Cir. 2012) (quotation marks and citation omitted). Clearly, only one Plaintiff was necessary to raise such a challenge.

Consistent with the nature of the action, Mr. Henderson deposed or presented for deposition almost every witness and Mr. Salem acted as trial counsel when Mr. Henderson was not available. Mr. Thai researched and drafted the lion's share of Plaintiffs' briefing (as well as spending hundreds of hours attending to almost every other task). And, while

9

Mr. Beben wrote off most time incurred with regard to depositions, he nonetheless charged for unnecessary review of pleadings and briefs.

Moreover, Mr. Beben impermissibly charged for numerous conferences with co-counsel. Not only that, many of Mr. Beben's entries offer no more detail than "conference with co-counsel" or "case strategy." Descriptors such as "attention to various emails" or "attend conference" or "review briefs and case law" are too vague to ascertain whether the charges are reasonable. *See, e.g., United States ex rel. Thompson v. Walgreen Co.*, 621 F. Supp. 2d 710, 727-28 (D. Minn. 2009). A sample of Mr. Beben's imprecise billings for multiple conference calls includes: (a) 4/22/2016: 1.5 hours; (b) 5/10/16: 2.0 hours (case strategy); (c) 8/10/16: 0.3 hours; (d) 9/8/16: 0.8 hours; (e) 2/8/17: 1.1 hours; (f) 3/17/17: 3.8 hours; (g) 6/26/17: 1.0 hours; (h) 8/22/17: 0.5 hours; (i) 8/31/17: 0.7 hours; (j) 10/12/17: 0.9 hours; (k) 11/10/17: 0.5; (l) 5/16/18: 0.4; (l) 6/25/18: 0.7 hours; (m) 7/10/18: 1.4 hours; (n) 8/27/18: 0.4; (o) 10/08/18: 0.3 hours; (p) 11/05/18: 0.5 hours; (q) 11/27/18: 0.5 hours; (r) 1/16/19: 0.5 hours; (s) 1/31/19: 0.5; and (t) 4/09/2019: 0.5 hours. In all, Mr. Beben charged for at 18.8 hours for conference calls, the nature of which is not adequately explained and which appear to be duplicative.[1]

---

[1] Mr. Henderson's billing reveals multiple instances of multi-attorney meetings, conferences and telephone calls. Examples include: (a) 2/3/16: 1.5 hours (meeting with Thai, Carter, Beben, Thai re: case); (b) 3/10/16: 1.3 hours (meeting with McCraw with Beben and Thai); (c) 3/10/16: 1.2 hours (meeting with Marshall with Beben and Thai); (d) 3/23/16: 2.5 hours (meeting with McCraw and Marshall with Beben and Thai); (e) 4/12/16: 1.2 hours (finalizing complaint with Thai and Beben); and (f) 11/9/17: 0.5 hours (call with Thai, Lambert and Beben).

Other entries contain block billing – *i.e.*, "11/01/16: Reviewed City's Response and Counter MSJ, annotated notes" or "03/33/18 drafting affidavits for msj, reviewing draft motions" or "6/29/18: meeting w/co counsel, trial prep" – so it is impossible to determine how much time was spent on each task. The applicant must provide "meticulous time records that reveal ... all hours for which compensation is requested and *how those hours were allotted to specific tasks.*" *Robinson v. City of Edmond*, 160 F.3d 1275, 1285 (10th Cir. 1998) (emphasis added). Block billing makes it difficult to determine reasonableness. *Id.* at 1284 n. 9. Plaintiffs' counsel bear the burden to provide billing records which show how much time is spent on each specific task, thus any doubts should be resolved in Defendants' favor. *See Hensley*, 461 U.S. at 437; *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 971 (D.C. Cir. 2004).

The "most efficient method" to account for block billing is using a "percentage reduction." *H.S. Field Servs., Inc. v. CEP Mid-Continent, LLC*, No. 12-CV-531-GKF-PJC, 2015 WL 1954462, at *10 (N.D. Okla. Apr. 29, 2015). *See, e.g., McCrary v. Country Mut. Ins. Co.*, No. 13-CV-507-JED-PJC, 2016 WL 8118183, at *3 (N.D. Okla. June 22, 2016), *report and recommendation adopted*, 2016 WL 8115369 (N.D. Okla. July 8, 2016) (15%); *Bramlett v. Med. Protective Co.*, No. 3:09-CV-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010) ("[M]any courts reviewing block-billed time entries have performed a percentage reduction either in the number of hours or in the lodestar figure typically ranging from 10% to 30%).

Since Mr. Beben was not necessary to the prosecution of this case and merely increased the overall cost, the City should not be required to pay his legal fees.

Notwithstanding, at least 18.8 hours of Mr. Beben's time was spent in conferences, and his use of block billing hampers real review of whether other time entries are likewise duplicative. If the Court determines that Mr. Beben should be compensated for a portion of his time, the City requests that the amount be reduced for block billing by 20% and further reduced by another 20% for duplicative billing. Thus, Mr. Beben's modified total hours would be 76.4 hours.

### 3.    Ms. Lambert

Ms. Lambert requests compensation for 463.7 hours. Like Mr. Beben, much of Ms. Lambert's participation, though certainly invaluable training for a young lawyer, was not necessary in this matter. As with each of her co-counsel, Ms. Lambert participated in numerous conferences and telephone calls doubtlessly designed to strategize. Additionally, while Ms. Lambert did not bill for her time for attending depositions, she billed her time in preparing for them, along with Mr. Henderson, Mr. Thai and Mr. Beben. For instance, on 9/21/17, Ms. Lambert billed 8.0 hours attending preparation for Chief Citty's deposition. *See also* 2/10/18: 2.9 hours (witness preparation with Mr. Thai); 2/11/18: 1.3 hours (same); 2/14/18: 3.0 hours (same); 2/23/18: 2.8 hours (Wilson deposition with others); 2/23/18: 2.8 hours (Faulk's deposition with others); 2/28/18: 4.0 hours (Marshall deposition with others); 2/28/18: 4.0 hours (Kelly deposition with others); 3/1/18: 4.0 (McCraw deposition with others); 3/1/18: 4.0 hours (Schindler deposition with others);[2]

---

[2] Interestingly, Mr. Henderson charged 6.2 hours for "helping" Ms. Lambert depose Officer Fowler on 2/2/18. However, Mr. Henderson conducted the deposition while Ms. Lambert marshalled the exhibits.

6/29/18: 3.0 hours (meeting with others); 7/2/18: 4.0 hours (meeting with others); 11/19/19: 3.5 hours (attend oral argument). Ms. Lambert spent at least 47.3 hours of wholly unnecessary time.

Some of her tasks took an inordinate amount of time. "The trial judge should weigh the hours claimed against his own knowledge, experience, and expertise of the time required to complete similar activities." *See Johnson*, 488 F.2d at 717. From 9/12/17 to 9/20/17, Ms. Lambert spent 26 hours "organizing traffic violations from Doc. Req. 10." In response to Request for Production No. 10, the City produced on accident report identified by bates number OKC000152-000158 and a Traffic Safety presentation totaling 14 pages. Included was a page of collision statistics and diagrams of 5 accidents. *See* Response attached as Exhibit 2.[3] She spent 8.0 hours drafting a 6-page motion to amend Plaintiffs' complaint [Doc. 73], *see* 11/3/17 and 11/8/17, and 3.0 hours conducting legal research regarding amending pleadings. *See* 11/3/17. Likewise, Ms. Lambert took 8.0 hours to draft a 2-page motion to set trial date. *See* 9/26/19 and 9/29/18. Ms. Lambert performed 9.0 hours of legal research regarding whether the City's revision of the ordinance mooted

---

[3] Plaintiffs' Request for Production No. 13 sought citations issued by the City from 2014 to 2017 for, among other things, disorderly conduct. The City produced 2,325 citations. However, approximately 800 of those are easily identified as disorderly conduct by minors due to fights at school and were, therefore, heavily redacted – a fact that would be quickly and readily apparent to a reviewer. In any case, these citations were not relevant to the litigation and it would have been unnecessary to enter them into a data base. Moreover, "traffic violations" as Ms. Lambert describes would not merit such a citation. And, Mr. Salem's billing indicates that Brandon Roberts, not Ms. Lambert, reviewed the citations when the City offered them as a trial exhibit. *See* Plaintiffs' Exhibit 4, Attachment A at 32.

Plaintiffs' claims regarding the original ordinance. *See* 11/21/17 and 12/120/2017. Ms. Lambert did not draft the response to the City's motion for partial dismissal, and, in any case, the Court granted the City's motion.[4] The time expended on these tasks is unreasonable.The City requests that the Court reduce the 54 hours Ms. Lambert spent on these tasks by half allowing recovery for 27 hours.

Clerical tasks are not compensable attorney time. *Chris Ctr. of Divine Philosophy, Inc.*, 2017 WL 4204029 (W.D. Okla. Sep. 21, 2017) (noting that entries like finalizing and filing pleadings and communications with process server were clerical in nature). Ms. Lambert charged $200 per hour for tasks that were either clerical or which should have been performed at a lower paralegal rate. For instance, on 9/27/17, Ms. Lambert spent 4.0 hours compiling and printing deposition exhibits. *See also* 1/2618: 2.0 hours; 2.7.18: 2.0 hours; 2/15/18: 2.0 hours; 3/30/18: 8.0 hours (prepare courtesy copies of filings); 8/10/18: 4.0 hours (compile exhibits); 9/4/18: 2.0 hours (organize exhibits); 10/23/18: 2.0 hours (compile exhibit book); 11/12/18: 1.5 (prepare exhibits); 11/12/18: 2.0 hours (prepare exhibits); 11/17/18: 8.0 hours (prepare powerpoint); 4/22/19: 3.2 (prepare appeal appendix); 4/24/19: 1.2 hours (same). Ms. Lambert incurred 40.7 hours of time on clerical tasks which the Court should disallow in whole or in part.

If the Court determines that Ms. Lambert's participation was necessary, the Court should heavily discount for her billed time unnecessary participation in multiple-attorney meetings, conferences, and telephone calls. She was performing the same tasks as everyone

---

[4] Mr. Thai, who actually drafted the response to the City's motion, also devoted research time to Plaintiffs' losing effort.

else on multiple occasions. *Ramos*, 713 F.2d at 554. Consequently, the City requests that the Court further reduce the bill by another 20%.

### 4. Mr. Henderson

Mr. Henderson seeks compensation for 277.5 hours. However, his request is not wholly reasonable.

To begin, not only can Mr. Henderson not recover for clerical or administrative tasks, *see* 3/29/18: 0.8 (prepare exhibits for filing); 3/29/18: 4.0 hours (ECF filing) – media-related time not compensable because not reasonably expended on the litigation. *Desena v. Lepage*, 847 F. Supp. 2d 207, 212 (D. Me. 2012) ("Reported federal cases are unanimous in denying awards of attorneys' fees for media-related time."). Mr. Henderson cannot recover for the hour of time he spent on 4/13/16 serving Plaintiffs' initial complaint and giving a press conference.[5]

Similar to Mr. Beben, at times, Mr. Henderson identified the "co-counsel" with whom he was meeting or conversing. At other times, he did not. *See, e.g.,* 8/10/16: 0.5 hours; 11/4/16: 0.8 hours; 4/16/17: 0.9 hours. Like Mr. Beben's entries, such vague descriptions do not permit the Court to adequately review the time spent for reasonableness. The City did not catalog every instance in which Mr. Henderson failed to properly identify with whom he was meeting.

As with all of Plaintiffs' counsel, Mr. Henderson engaged in overly duplicative tasks resulting in highly duplicative billing. As noted, Mr. Henderson was part of the litigation

---

[5] Mr. Thai billed .5 for the same task. *See* Exhibit 5, Attachment A, Item 39. He too is not entitled to compensation for this amount.

team meetings, conferences and telephone calls. Moreover, he spent 1.0 hours reviewing the City's response to Request for Production 10 on 9/8/17 – the same requests that Ms. Lambert spent 26 hours reviewing and compiling. Likewise, Mr. Henderson spent 1.5 hours researching "mootness" on 11/21/17 in addition to Ms. Lambert's 9.0 hours of legal research and Mr. Thai's 7 hours of research. As with Mr. Beben, Ms. Lambert and Mr. Salem, the City requests that the Court further reduce the bill by another 20% given the prevalence of duplicative billing.

Mr. Henderson's billing further shows that although he represented Plaintiffs through mid-2018, a relocation required that Plaintiffs find new trial counsel, Mr. Salem. Mr. Salem's billing indicates that Mr. Thai contacted him in May 2018. *See* Plaintiffs' Exhibit 2, Attachment A at 1. Mr. Salem began billing on the file in earnest on June 20, 2018. *Id*. at 2. Mr. Henderson, nonetheless, continued to bill 70.8 hours (approximately a quarter of the hours for which he seeks compensation) after Mr. Salem joined the trial team. Given Mr. Henderson's familiarity with the case, his participation to help Mr. Salem was not fully duplicative. However, as Mr. Salem's billing makes clear, Mr. Thai was Mr. Salem's primary resource for information regarding the case. *See* Plaintiffs' Exhibit 2, Attachment A and Plaintiffs' Exhibit 1, Attachment A. Mr. Thai was more than capable of assuring that Mr. Salem adequately learned the case.

After Mr. Salem arrived and was brought up to speed, Mr. Henderson's participation was not necessary or reasonable. Some of his trial preparation hours were spent along with Mr. Salem in preparing witnesses. On 7/18/18, Mr. Salem spent 4.5 hours and Mr. Henderson spent 3.0 hours preparing Mr. Faulk. On 7/19/18, Mr. Salem spent 4.5 hours

and Mr. Henderson spent 4.4 hours preparing Ms. Kelly. Mr. Henderson and Mr. Salem both spent time on November 13, 2018, 2.3 hours respectively, preparing Mr. Griffin for trial. Moreover, although Mr. Salem drafted the trial brief, *see* Plaintiffs' Exhibit 2, Attachment A at 11, 16 and 19, Mr. Henderson "collaborated" on the brief to the tune of 1.2 hours on 8/14/18. Further, Mr. Henderson continued to draft pleadings either Ms. Lambert, Mr. Thai (neither of whom presented witnesses at trial) or Mr. Salem could easily have drafted. *See* 11/21/18: 1.8 hours; 11/23/18: 2.1 hours; 11/27/18: 1.0 hours. Mr. Henderson also charged 18.4 hours for "conducting bench trial." Yet, Mr. Henderson did not present a witness or oral argument at trial. Finally, Mr. Henderson billed 10 hours after trial (not counting billing in preparation of Plaintiffs' fee application) that was, or could have been, billed just as easily by Mr. Salem, Mr. Thai or Ms. Lambert. *See* Plaintiffs' Exhibit No. 3, Attachment A, Items 180-192. Given Mr. Salem's presence along with Mr. Thai, Mr. Henderson should not be compensated for his duplicative and/or unnecessary billing. The Court should disallow at least 41.9 hours Mr. Henderson billed after Mr. Salem joined Plaintiffs' trial team.

### 5.   Mr. Salem

As noted, Mr. Salem joined the trial team after discovery was complete. He requests compensation for 527.60 hours, most incurred preparing for trial, and trying the case.

A review of Mr. Salem's billing statements reveals that, at times, his descriptions are too vague to ascertain whether his billing is reasonable. For example, from time to time he failed to identify the co-counsel with which he was dealing. *See, e.g.,* 7/4/18: 1.0 hours; 7/23/18: 0.8 hours; 7/26/18: 0.2.

At other times, Mr. Salem engaged in improper block billing. *See* (a) 5/22/18: 1.0 hours; (b) 6/26/18: 1.2 hours; (c) 6/27/18: 2.0 hours; (d) 7/1/18: 1.0 hours; (e) 7/1/18: 0.3 hours; (f) 7/2/18: 3.0 hours; (g) 7/5/18: 2.0 hours; (h) 7/11/18: 2.0 hours; (i) 7/13/18: 1.5 hours, 0.8 hours, 4.5 hours; (j) 7/30/18: 0.4 hours; (k) 7/31/18: 2.2 hours; (l) 8/7/18: 1.0 hours; (m) 8/8/18: 1.0 hours, 3.0 hours; (n) 8/10/18: 2.5 hours; (o) 8/28/18: 10.0 hours; (p) 8/29/18: 8.3 hours; (q) 11/18/18: 4.0 hours; (r) 12/19/18: 0.5 hours; and (s) 4/5/19: 0.9 hours, 0.5 hours. As with Mr. Beben's block billed hours, Mr. Salem's hours impermissibly billed hours should be reduced by 20% (46.1 hours x 20% = a 9.2 reduction).

Like Ms. Lambert, Mr. Salem performed clerical and administrative tasks that are not compensable. *See* (a) 8/10/18: 0.5 hours (email regarding delivery of exhibits); (b) 8/15/18: 1.0 hours (file trial brief); (c) 9/14/18: 0.2 hours (email re: receipt of City's exhibits); (d) 10/4/18: 0.2 hours (research re: filing procedures); (e) 1/16/18: 0.2 hours (file notice of appeal); (f) 1/17/19: 0.3 hours (download transcript order form), 0.3 hours (telephone court reporter re: transcript), 0.6 hours (emails re: payment of court reporter and filing appeal documents); (g) 1/23/19: 0.1 hours (email re: 10th Cir. docket letter); (h) 1/28/19: 0.2 hours (email re: filing of docketing statement and other documents), 0.1 hours (email to court reporter); (i) 1/29/19: 0.3 hours (emails re: payment to court reporter), 0.2 hours (file entry of appearance), 0.2  hours (review entry of appearance), 0.2 hours (email re: court reporter fee), 0.2 hours (prepare docketing statement for filing), 0.5 hours (file docketing statement), 0.2 hours (file transcript order form); (j) 2/8/19: 0.2 hours (email to court reporter re: filing transcript and conventional filing); (k) 2/11/19: 0.2 hours (re: gathering documents for appendix); (l) 2/20/19: 0.1 hours (email re: appendix);

(m) 2/21/19: 0.3 hours (email re: schedule and appendix and calendaring dates); (n) 2/22/19: 0.2 hours (status email, appendix preparation); (o) 3/1/19: 0.2 hours (questions re: appendix preparation); (p) 3/5/19: 1.0 hours (emails re: status of appendix); (q) 3/6/19: 0.1 hours (email re: status of appendix), 0.1 hours (telephone call re: status of appendix), 0.3 hours (email re: appendix and descriptions for brief citations); (r) 3/12/19: 0.2 hours (email to court report and Lambert re: refund to reporter); (s) 5/16/19: 0.3 hours (Lambert email re: appendix preparation); (t) 5/20/19: 1.3 hours (assemble appendix in final version); (u) 5/27/19: 0.2 hours (email re: searchability of pdf); (v) 6/5/19: 1.0 hours (multiple emails re: finalized appendix); (w) 6/7/19: 1.5 hours (telephone calls with court clerk re: submitting appendix in proper format); (x) 6/8/19: 1.10 hours (prepare appendix per court clerk orders); (y) 6/9/19: 2.0 hours (prepare appendix/redactions); (z) 6/10/19: 3.0 hours (appendix preparation, printing, index); (aa) 6/11/19: 3.5 hours (prepare appendix); (bb) 6/12/19: 0.7 hours (email re: format and printing of appendix); (cc) 6/13/19: 2.5 hours (upload appendix), 0.5 hours (email re: printing appendix), 0.3 hours (mistake in billing statement – total before objections should be 0.5 hours, not 1.2 hours); (dd) 6/14/19: 0.2 hours (instructions regarding printing brief); 0.3 hours (prepare dropbox directory); (ee) 6/15/19: 1.8 hours (inspect printed copies of brief and appendix); (ff) 6/17/19: 0.1 hours (email to clerk), 0.5 hours (review appendix assembly), 0.5 hours (receive ECF filing notices); (gg) 6/18/19: 0.3 hours (emails re: bookmarking appendix); (hh) 9/9/19: 0.2 hours (review calendar notice of oral argument); (ii) 9/23/19: 0.2 hours (emails re: notice of oral argument).The City calculates that Mr. Salem performed noncompensable administrative tasks totaling 30.4 hours.

Mr. Salem's hourly totals for certain entries were not correct. *See* (a) 7/1/18 (time actually billed 1.0 hour, time charged 1.8 hours subtract 0.8 hours); (b) 7/10/18: (time actually billed 1.6 hours, time charged 2.5 hours subtract 0.9); (c) 7/12/18: (time actually billed1.9 hours, time charged 2.0 hours subtract 0.1 hours); (d) 7/13/18 (time actually billed 0.0 hours, time charged 1.5 hours subtract 1.5 hours); (e) 7/16/18 (time actually billed 0.4 hours, time charged 0.5 hours subtract 0.1 hours); (f) 11/17/18; (time actually billed 7.0 hours, time charged 7.5 hours subtract 0.5 hours); (g) 6/13/19: (time actually billed, 0.5 hours, time charged 1.2 hours subtract 0.7 hours). In total, Mr. Salem charged 4.6 hours more than he billed.

Mr. Salem seeks travel expenses for mileage and parking totaling $189.20. "[B]ecause there is no need to employ counsel from outside the area in most cases, we do not think travel expenses for such counsel between their offices and the city in which the litigation is conducted should be reimbursed. Departure from this rule should be made in unusual cases only." *Ramos*, 713 F.2d at 559.

###### 6.    Mr. Thai

Mr. Thai seeks compensation for 1599 hours including 1073.8 pre-appeal billed hours. Of that, a bit over half (approximately 562) was spent on research and writing various pleadings and motions. Together Mr. Henderson and Mr. Salem assert entitlement to compensation for approximately 795 hours. Mr. Thai asks for compensation for approximately 511 hours engaged in almost exactly the same tasks with Mr. Henderson and Mr. Salem. This is simply not reasonable.

While Mr. Thai should be credited with an award reflecting a reasonable time spent shepherding the litigation as lead counsel, Plaintiffs are not entitled to recover multiple fees billed for the exact same tasks. The Court should, therefore, allow Mr. Henderson and Mr. Salem a reasonable fee for the tasks they completed within their areas of expertise – discovery depositions and trial preparation and trial and trial preparation respectively, and Mr. Thai should be fully compensated for the hours he reasonably spent engaged in his area of expertise – briefing and appeal work with an allowance for his work as lead counsel. The City requests that the Court reduce Mr. Thai's requested hours by 300 to account for the duplicative billing.

A movant "cannot demand a high hourly rate – which is based on his or her experience, reputation, and presumed familiarity with the applicable law – and then run up an inordinate amount of time researching that same law." *Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983). Therefore, the Court "should deduct for '[e]xcessiveness of time spent in light of an applicant's expertise." *Robinson v. Fetterman*, 387 F. Supp. 2d 432, 436 (E.D. Pa. 2005) (quoting *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 721 (3d Cir. 1989)).

In several instances, the time Mr. Thai and his team spent in preparing pleadings was substantially greater than the time spent by opposing counsel. For instance, Mr. Thai spent a combined 29.7 motion to strike jury demand/ response to request for advisory jury, while opposing counsel spent approximately 6.8 hours addressing the same issues. *See* Exhibit 1. Mr. Thai spent 27.2 hours drafting findings of fact and conclusions of law while the City spent approximately 15.1 hours. *Id*. Mr. Thai spent 24 hours researching and

drafting a response to the City's trial brief, which took approximaqtely12 hours to draft, and addressed appropriate treatment of Plaintiffs' claims that the City impinged on their liberty interests. *Id.* In addition to Ms. Lambert's 26 hours spent dealing with the City's Production No. 10, Mr. Thai incurred fees of 2 hours, *see* Exhibit 1, Attachment A, Item 169 9/08/17, and 1.6 hours, *see id.* Item 172 9/08/17.

Mr. Thai also billed time for clerical/administrative tasks. *See* Plaintiffs' Exhibit 1, Attachment A, Item 241 12/13/17: 0.2 (email memorandum); Item 319 3/29/18: 3 (finalize motion for filing multiple unsuccessful attempts at ECF filing).

In addition to a reduction of 300 hours for Mr. Thai's duplicative staffing of the case, the Court should also reduce his requested hours by 53.6 hours (22.9 + 12.1 + 12 + 2 + 1.6 + .02 + 3) to account for time unreasonably incurred.

### D.    Plaintiffs Are Not Entitled to An Enhancement.

The Court may make "appropriate adjustments [up or down to the lodestar] based on what are sometimes referred to as the 'Johnson factors.'" *H&S Equip., Inc. v. Devon Energy Prod. Co., L.P.*, No. CIV-15-1244-HE, 2017 WL 5760122, at *1 (W.D. Okla. Oct. 10, 2017); *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012). The Court may consider:

> (1) the time and labor required, (2) the novelty and difficulty of the questions; (3) the skill required; (4) preclusion of other employment; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client; (8)  the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. It is rare for a party to meet all of these factors. *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 853 (10th Cir. 1993). The lodestar calculation, not the *Johnston* factors, is the primary consideration in awarding fees. *Anchondo*, 616 F.3d at 1102.

In extremely rare circumstances, the Court can enhance the lodestar where it "does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 552. However, "the Supreme Court has made clear that ... courts cannot adjust the lodestar based on factors which the figure already subsumes," such as "novelty, complexity or quality of attorney performance." *Animal Legal Defense Fund v. Kelly*, No. 18-2657-KHV, 2020 WL 4000905, at * 10 (D. Kan. July 15, 2020) (citing *Perdue*, 559 U.S. at 553) (determining that there was no authority to support plaintiff's quest for fee enhancement based on "exceptional results"); *Catholic Benefits*, 2018 WL 3876615 at *12 ("'The 'novelty [and] complexity of the issues,' 'the quality of representation,' and the 'results obtained' from litigation are ... fully reflected in the lodestar amount and thus cannot serve as independent bases for [adjusting] the basic fee award." (quoting *Pennsylvania v. Del. Valley Citizens' Counsel for Clean Air*, 478 U.S. 546, 565 (1986)).

Because the quality of representation is already reflected in the lodestar, an enhancement is available in only the rare case where "the quality of service rendered was superior to that one reasonably should expect in light of the hourly rate charged and that the success was exceptional." *Blum*, 465 U.S. at 899 (internal quotation marks omitted). Examples of such rare circumstances include: (1) to compensate for a low hourly rate that

does not reflect counsel's true market value; (2) to compensate counsel for delay in receiving reimbursement for a large outlay of litigation expenses; and (3) to compensate counsel for an exceptional delay in receiving the payment of fees. *Perdue*, 559 U.S. at 554-56. The *Perdue* Court observed that it had "never sustained an enhancement of a lodestar amount for performance." 559 U.S. at 554.

> As the court in *Ramos* stated:
>
> We do not discount the possibility that in a particular case the plaintiff's lawyers may have performed so brilliantly that extraordinary compensation is warranted. But we think that this genius factor diminishes and eventually disappears as the number of hours expended on the case increases....We also believe that the greater the number of attorneys involved on a side, the less likely it is that an extraordinary performance bonus is appropriate....Thus, we believe that bonuses or multipliers of the normal fee because of the extraordinary skill of counsel should be rarely awarded, and should be confined to cases in which the bulk of the work was done by a single attorney who exhibits extraordinary skill or to cases in which the work was done well in a relatively short time given the complexity of the task.

713 F.2d at 557. Five attorneys seek compensation for 3014.1 hours totaling $1,223,100.00. Mr. Thai billed just over half of the hours requested. The case spanned several years. Applying *Perdue* and *Ramos*, this is not the rare case in which an enhancement should be awarded.

WHEREFORE, premises considered, the Defendants, City of Oklahoma City and William Citty, respectfully pray for the relief requested.

Respectfully submitted:


/s/ *Catherine L. Campbell*
Catherine L. Campbell, OBA #14689
PHILLIPS MURRAH P.C.
Corporate Tower / Thirteenth Floor
101 North Robinson
Oklahoma City, OK  73102
Telephone:    (405) 235-4100
Facsimile:     (405) 235-4133
clcampbell@phillipsmurrah.com

and

Amanda Brown Carpenter, OBA No. 20965
Assistant Municipal Counselor
200 N. Walker, Suite 400
Oklahoma City, OK 73102
(405) 297-2451; (405) 297-3851
Amanda.Carpenter@okc.gov


## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of May, 2021, I electronically transmitted the attached pleading to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gregory P. Beben, gregory.beben@laok.org

Joseph T. Thai, thai@post.harvard.edu

Brady R. Henderson, bhenderson@acluok.org, misterjustice@gmail.com

Megan E. Lambert, mlambert@acluok.org, meganbert@gmail.com

Michael C. Salem, msalem@msalemlaw.com, mcs@n5ms.org, mcsalem@swbell.net

Ryan D. Kiesel, rkiesel@acluok.org

Amanda B. Carpenter, Amanda.Carpenter@okc.gov.


/s/ *Catherine L. Campbell*