**CASE NO. CIV-16-352-HE**

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

CALVIN McCRAW, G. WAYNE MARSHALL, MARK FAULK, TRISTA
WILSON, NEAL SCHINDLER, OKLAHOMA LIBERTARIAN PARTY, and
RED DIRT REPORT,
*Plaintiffs*
v.

CITY OF OKLAHOMA CITY and WILLIAM CITTY, in his official capacity as
Chief of the Oklahoma City Police Department,
*Defendants*

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFFS' MOTION FOR ATTORNEYS' FEES
AND BRIEF IN SUPPORT**

**Joseph Thai**
P.O. Box 961
Norman, OK 73070
(405) 204-9579
thai@post.harvard.edu

**Micheal Salem**
Salem Law Offices
101 East Gray St., Suite C
Norman, OK 73069
(405) 366-1234
msalem@msalemlaw.com

**Megan E. Lambert**
**Brady Henderson**
ACLU of Oklahoma Foundation
P.O. Box 1626
Oklahoma City, OK 73103
(405) 525-3831
mlambert@acluok.org

**Greg P. Beben**
Legal Aid Services of Oklahoma
2901 North Classen Blvd., Suite 112
Oklahoma City, OK 73106
(405) 488-6825
gregory.beben@laok.org

June 7, 2021

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 1

I.   Defendants' Requested Twenty-Percent Cuts Are More Than Duplicative And Their
     Math Does Not Add Up .................................................................................. 1

II.  The Contention That Prof. Thai's Current Market Rate Of $500 Should Be
     Discounted To $400 Is Contrary To Unrebutted Evidence And § 1988 Policy ........... 2

III. Defendants' Requested Cuts To Plaintiffs' Already Discounted Time Lack
     Specificity And Merit While Significantly Misstating The Record Twice ................. 4

     A.  Prof. Thai ................................................................................................ 4

     B.  Mr. Salem ............................................................................................... 7

     C.  Mr. Henderson ......................................................................................... 9

     D.  Ms. Lambert And Mr. Beben ...................................................................... 10

# TABLE OF AUTHORITIES

*Page(s)*

**CASES:**

*Bishop v. Smith,*
112 F. Supp.3d 1231 (N.D. Okla. 2015) ........................................................................3, 7

*Hensley v. Eckerhart,*
461 U.S. 424 (1983).............................................................................................................4

*Malloy v. Monahan,*
873 F.3d 1012 (10th Cir. 1996) ..........................................................................................3

*McCraw v. City of Oklahoma City,*
973 F.3d 1057 (10th Cir. 2020).........................................................................6, 7, 9, 10

*Missouri v. Jenkins,*
491 U.S. 274 (1989) ............................................................................................................3

*Robinson v. City of Edmond,*
160 F.3d 1275 (10th Cir. 1998) ......................................................................................2, 8

**STATUTES AND RULES:**

10th Cir. R. 10.1 .................................................................................................................8

ECF Policies & Procedures Manual §§ I.B.1 & I.C.1 (W.D. Okla. May 2021).................7

**EXHIBIT LIST:**

Exhibit 1 – Pls. Trial Ex. 31

Exhibit 2 – McBride Supp. Decl. (the initial, Dkt. 213-7, is cited "McBride Decl.")

Exhibit 3 – Salem Supp. Decl. (the initial, Dkt. 213-2, is cited "Salem Decl.")

There is much Defendants do not dispute. *First*, Plaintiffs secured a significant free speech victory and are entitled to fees for all claims, including against the Original Ordinance. Dkt. 213 at 2-8. *Second*, Defendants significantly drove up fees with vigorous and duplicative tactics. *Id.* at 1-4, 15. *Third*, Plaintiffs wrote off hundreds of hours and refrained from costly tactics. *Id.* at 16-19. *Fourth*, while contesting Prof. Thai's hourly rate, Defendants do not dispute that those for the rest of the legal team fall on the "low end" of a reasonable range. *Id.* at 11-14. Plaintiffs have saved Defendants sizable sums.

Defendants submit a wishlist of massive write-offs that are short on specifics and support or grounded on glaring misstatements. For example, they request to entirely cut Mr. Henderson's time after Mr. Salem entered the case, as "Mr. Henderson did not present a witness or oral argument at trial." Dkt. 215 at 17. In fact, he examined three of Plaintiffs' six trial witnesses and successfully argued and briefed against objections to key exhibits. Moreover, Defendants' requested cuts for alleged duplication are themselves highly duplicative, and their tallies for requested write-offs inflate them by hundreds of hours.

For their part, Defendants submit no time records for their lead counsel and only a two-month sliver for their second chair. Those invoices show the very "block billing" and "duplication" that Defendants decry. Except for 4.6 hours, Plaintiffs merit their fees in full.

I.     **Defendants' Requested Twenty-Percent Cuts Are More Than Duplicative And Their Math Does Not Add Up.**

For alleged "duplicative billing," Defendants' Appendix lists a twenty-percent across-the-board cut for <u>every</u> member of Plaintiffs' team. Dkt. 215-3. This is discounting five times over. Yet for Prof. Thai, they cite only 5.9 hours of "duplication" for 300 hours

of cuts, and for Mr. Salem, they cite only 6.2 hours for 98.5 hours of cuts. *See infra* p. 4, 8. Instead, they broadly claim Prof. Thai's trial-level work was "duplicative staffing," Dkt. 215 at 22, but fully paid Ms. Campbell as second chair for less active participation at trial and on appeal. *See infra* pp. 4-5. For Mr. Henderson, they cite under 20 hours as duplicative, yet list a 46-hour cut. *Compare* Dkt. 215 at 16-17 *with* Dkt. 215-3. For Ms. Lambert and Mr. Beben, they claim calls and meetings were duplicative, but these attorneys have severely cut their time for calls, meetings, and other tasks. Dkt. 213 at 17.

Additionally, Defendants' brief does not allege Mr. Henderson engaged in "block billing," yet their Appendix lists another 46-hour cut. Dkt. 215-3. Their brief does request a 9.2-hour cut (twenty percent) from 46.1 hours of alleged "block billing" by Mr. Salem, yet their Appendix lists another 98.5-hour cut. *Compare* Dkt. 215 at 18 *with* Dkt. 215-3.

Defendants' math inflates tallies by hundreds of hours and amounts to an improper invitation to "eyeball the fee request and cut it down by an arbitrary percentage." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quotation marks omitted).

## II.   The Contention That Prof. Thai's Current Market Rate Of $500 Should Be Discounted To $400 Is Contrary To Unrebutted Evidence And § 1988 Policy.

Defendants do not contest the most direct evidence of the local hourly rate for Prof. Thai—his paid rate of $500. Dkt. No. 213 at 11. Further, Defendants offer no evidence against the assessment of Plaintiffs' six declarants—established local practitioners familiar with local rates and Prof. Thai's top qualifications, experience, expertise, and skill in First Amendment law and appellate litigation. Dkt. 213 at 10. They attest $500 falls "on the low

end of an appropriate hourly rate." Goodman Decl. ¶ 16.A.[1]

While Ms. Campbell charges the City $300 ("$30 below [her] A rate"), Campbell Decl. ¶ 4, Dkt. 215-1, there is no equivalence.[2] With all due respect, her declaration does not evidence top-level qualifications, experience, expertise, or skill. *Compare* Campbell Decl. ¶¶ 1-3 with Thai Decl. ¶¶ 1-16. That she commands $330 proves the local market values her below Prof. Thai. *Cf.* Rupert Decl. ¶ 9 ("The value of Professor Thai's work in the Video Gaming case was well worth $500 per hour, which my client paid in full").[3]

Defendants cite cases in which other attorneys received lower historical rates. Dkt. 215 at 5-6. However, with one exception, Defendants make no attempt to compare their qualifications, expertise, and skill with Prof. Thai. The exception is *Bishop v. Smith*, which awarded Prof. Thai $400 an hour <u>six years ago</u> based on his "expertise in the Fourteenth Amendment and appellate advocacy" and paid rate at the time of $400. 112 F. Supp.3d 1231, 1252 (N.D. Okla. 2015); *see Missouri v. Jenkins*, 491 U.S. 274, 284 (1989) (under

---

[1] *Accord* McBride Decl. ¶ 37.A ($500 "falls on the low end of a reasonable hourly rate spectrum for someone of Professor Thai's exceptional experience, expertise, and demonstrated skill level locally"); Warner Decl. ¶ 18 ($500 "is more than fair and reasonable," as "Prof. Thai would be well justified in charging a higher rate"); Rupert Decl. ¶ 10 ($500 is "more than reasonable given his unique abilities and the complex federal constitutional questions involved in this case"); Behenna Decl. ¶ 9 ($500 is "well within" local rates for comparable experience and expertise); Calvert Decl. ¶ 10 ($500 is "significantly less than the going rate" for someone like Prof. Thai).

[2] As to Mr. Salem, there is also no comparability with Prof. Thai on background, First Amendment and appellate expertise, or local market rates. *See* Salem Supp. Decl. ¶ 3.

[3] Defendants also overlook the incomparability of economics on opposing sides of civil rights work. *See Malloy v. Monahan*, 73 F.3d 1012, 1018-19 (10th Cir. 1996) (rejecting claim that rate of plaintiffs' counsel should match lower rate of defense counsel, as "Plaintiffs' and defendants' civil rights work … are markedly dissimilar" in timing and guarantee of payment); Dkt. 213 at 9; Goodman Decl. ¶¶ 10-11, 21-23; McBride Decl. ¶¶ 38, 41-45, 51-54; Rupert Decl. ¶ 12.

Section 1988, courts should use "current rather than historic hourly rates").

Finally, Defendants' assertion they should not pay for "Cadillac" services (Dkt. 215 at 4) is defied by the "excellent results" achieved. *Hensley*, 461 U.S. at 435. Defendants do not deserve a discount for violating rights that Prof. Thai's team vindicated.

## III. Defendants' Requested Cuts To Plaintiffs' Already Discounted Time Lack Specificity And Merit While Significantly Misstating The Record Twice.

**A. Prof. Thai.** On top of seeking a twenty-percent cut off Prof. Thai's rate, Defendants assert he engaged in "approximately 511 hours" in "almost exactly the same tasks with Mr. Henderson and Mr. Salem," and request a reduction of 300 hours (another twenty-percent cut) for "duplicative billing." Dkt. 215 at 20-21. But aside from two cited tasks totaling 5.9 hours, they fail to identify <u>any</u> entry allegedly involving "almost exactly the same tasks."[4] This Court should reject this unsubstantiated claim—which inflates the cited hours by <u>over 5000%</u>, and which is impossible to refute or adjudicate. *Id.* at 21.

Other tasks Defendants broadly critique—"discovery depositions and trial and trial preparation"—are not grounded in "duplication" but claimed to be outside Prof. Thai's expertise. *Id.* However, Defendants acknowledge employing at least two attorneys throughout. Dkt. 215 at 7; *cf.* Goodman Decl. ¶ 24 (employing "three of more" for comparably complex federal litigation); McBride Decl. ¶ 33 (same). Ms. Campbell sat second chair at depositions, trial, and oral argument without examining witnesses or

---

[4] Defendants claim Prof. Thai engaged in 7 hours of "duplicative" research on mootness, but his records total only 5.4 hours. *Compare* Dkt. 215 at 16 *with* Thai Decl. Attach. A lns. 231-32, 236. Prof. Thai delegated some aspects of mootness research to Ms. Lambert to divide time and save fees. The only other "duplicative" entry Defendants cite is .5 hours for serving the complaint. Dkt. 215 at 15 n. 5.

arguing on appeal. Presumably she aided lead counsel in all those tasks to earn her quarter million, most billed prior to appeal. Dkt. 213 at 23-24 & Ex. 20. Defendants do not claim Ms. Campbell forewent any fees for pretrial or trial work because of "duplication" or lack of involvement with her only claimed specialty, "appellate practice." Campbell Decl. ¶ 3.[5]

By contrast, Prof. Thai deposed one "expert" who testified at trial by designation, Dkt. 151, argued First Amendment law at trial, Trial Tr. 414, 428, and argued on appeal. Further, he strategically led Plaintiffs' team from discovery and depositions to witness preparation and trial, framing and developing facts and arguments for a successful appeal that aligned closely with both. Dkt. 213 at 4-5; Salem Supp. Decl. ¶ 3; Thai Decl. ¶ 17. The value of such services is recognized in the City's retainer agreement for Ms. Campbell, which recites that "her expertise in First Amendment law" will "greatly benefit" it "in the litigation of the case" from pre-trial onward, even requiring that she "shall be present and shall participate in all pretrial proceedings." Dkt. 213, Ex. 19 at 2, 6. Prof. Thai's current paid client also values such trial-level work, paying $500 per hour. Behenna Decl. ¶¶ 5-6.

Finally, Defendants complain Prof. Thai and his team spent "substantially greater" time "preparing pleadings." Dkt. 215 at 21. But without time records for <u>all</u> defense attorneys—and only a sliver from the second chair—it is impossible to refute or judge such an overbroad assertion. Moreover, Defendants do not challenge time spent on the most critical, time-consuming pleadings—summary judgment and appellate briefing—or on oral argument preparation. Nor do they question the declarations of attorneys who have worked

---

[5] The record reflects Ms. Campbell billed for work on "discovery issues" and other pretrial tasks and demanded full payment "immediately upon receipt." Campbell Decl. at 4-7.

with Prof. Thai and praise his efficiency. Behenna Decl. ¶ 10; Calvert Decl. ¶¶ 9, 11; Kurt Decl. ¶ 11; Warner Decl. ¶ 20. Indeed, he saved co-counsel time. Salem Supp. Decl. ¶ 4. Instead, Defendants cherry-pick three examples.

*First*, Defendants compare the hours Prof. Thai spent on both a 10-page motion to strike Defendants' jury demand <u>and</u> a 10-page response to Defendants' 4-page request for an advisory jury. The comparison offers another example of Defendants' wasteful tactics. *See* Dkt. 213 at 15-16. Defendants' refusal to withdraw their meritless jury demand necessitated Plaintiffs researching and drafting a motion that foreclosed that request. Dkt. 40 at 4 n. 2. Only <u>after</u> Plaintiffs filed that motion did Defendants concede "the City does not disagree"—but instead of dropping their pursuit of a jury, argued for an advisory one in a brief filled with citations. Dkt. 42. Prof. Thai then had to research and draft a response demonstrating Defendants' lack of merit. Dkt. 47. This Court agreed. Dkt. 48.

*Second*, Defendants criticize Prof. Thai's time on Plaintiffs' findings of fact and conclusions of law ("FOF-COL"). But the total time Defendants dedicated to their FOF-COL remains unsubstantiated, as Ms. Campbell's invoice documents that she "sen[t] to A. Carpenter after drafting." Dkt. 215, Ex. 1 at 6. Besides, Defendants are again comparing apples to oranges. Their FOF-COL ran 21 pages, whereas Plaintiffs' ran 54. *Compare* Dkt. 127 to Dkt. 131. Furthermore, Plaintiffs' FOF-COL established a framework for constructing their record at trial and arguments on appeal, which contributed to the Tenth Circuit concluding that Defendants "utterly failed" to make their First Amendment case on facts and law. *McCraw v. City of Oklahoma City*, 973 F.3d 1057, 1077 (10th Cir. 2020).

*Third*, Defendants contrast Ms. Campbell's time briefing the freedom of movement

with Prof. Thai's time responding. But her hasty work <u>misinformed</u> this Court that "no authority supports the notion that the right is fundamental." Dkt. 126 at 3-4. He showed that several circuit and district courts recognized that right as fundamental. Dkt. 135 at 7-10. The Tenth Circuit agreed. *McCraw*, 973 F.3d at 1080-81 ("Several of our sibling circuits have explicitly held that a fundamental right to the freedom of movement exists").[6]

**B. Mr. Salem.** In their brief, Defendants cite only 46.1 hours of Mr. Salem's time as "block billed" and request a twenty-percent or 9.2-hour cut off those entries. Dkt. 215 at 18. Yet in their Appendix, 9.2 hours inflates <u>over 1000%</u> to 98.5 hours of "block billing"—an unsubstantiated twenty-percent off his overall 527.6 hours. Dkt. 215-3.

Mr. Salem's entries—including the cited ones—often broke down billed time by increments in the description, and all provide fine detail to fully justify the time.[7] Furthermore, he significantly discounted nearly all entries, often by much more than twenty percent.[8] By contrast, Ms. Campbell's sample invoices are replete with worst "block

---

[6] Defendants' cuts for time Prof. Thai, Mr. Salem, Mr. Henderson, and Ms. Lambert spent finalizing and filing pleadings (Dkt. 215 at 14-15, 18-19, 22) are misplaced. *See Bishop*, 112 F. Supp.3d at 1247 ("Finalizing and proofreading a complex appellate brief addressing numerous constitutional issues is not a secretarial task … Attention to these types of details by Thai is reasonable."). Indeed, this Court's ECF Manual only allows admitted attorneys to register and makes them "responsible and accountable for all documents filed." Part I.B.1 & I.C.1; *see* Ex. 2, McBride Supp. Decl. ¶¶ 2-3. Ms. Campbell's own invoice shows she billed the City to "finalize pleadings for filing." Campbell Decl. at 4.

[7] *See, e.g.*, Salem Decl. Attach. A, entry 7/1/18 ("Continue review Cutting and DC findings (1.8 hrs); Email from Joe Thai regarding photos and forum (0.2 hr); Long email to Joe Thai in response with discussion about witness order and exhibit presentation at trial (0.7 hr); Response email from Joe Thai about these issues (0.2 hr); Begin review of Thayer opinion (Overall 2.9 hrs reduced from 3.3 hrs)").

[8] *See, e.g.*, Salem Decl. Attach. A, entries of 6/26/18 (2.0 to 1.2 hours); 6/27/19 (3.0 to 2.0 hours); 7/1/18 (1.5 to 1.0 hours); 7/2/20 (4.5 to 3.0 hours).

billing," devoid of breakdowns or discounts.[9] The City does not claim it cut her fees.

Mr. Salem's detailed entries are "rock solid" and his discounts "too generous," McBride Decl. ¶ 73—far from "sloppy and imprecise" entries that may justify reductions. *Robinson*, 160 F.3d at 1284-85 (quotation marks omitted). Indeed, his timekeeping was upheld by the Tenth Circuit, as "it is clear that [he] did not engage in 'block billing.'" *Id*.[10]

Defendants' brief cites only 6 hours of Mr. Salem's time as "duplicative," Dkt. 215 at 16-17, yet their Appendix lists a twenty-percent overall discount (98.5 hours) for duplication—on top of the twenty-percent overall discount for block billing. Dkt. 215-3.[11] Nothing in Defendants' brief or the record supports this enormous forty-percent cut.

Defendants list "noncompensable administrative tasks totaling 30.4 hours." Dkt. 215 at 19. The majority pertain to the creation of the appendix, a record exceeding 4000 pages for establishing facts and supporting arguments on appeal. Its compilation required legal knowledge, experience, and judgment. Indeed, the Tenth Circuit specifies that "the record on appeal is presented in an electronic appendix prepared by counsel." 10th Cir. R.

---

[9] *See, e.g.*, Campbell Decl. at 7, entry 8/15/18 (for 8.0 hours, "Complete draft Trial Brief; edit final draft Trial Brief; continue draft Motions in Limine; edit final draft Motions in Limine; review Pretrial Report; edit final draft Findings of Fact and Conclusions of Law"); *see also* 8/12/18, 8/14/18, 8/20/18, 8/22/18, 8/3018 (multiple tasks "block billed").

[10] Defendants' claim that Mr. Salem's entries are "too vague" identify only three entries, totaling 2 hours, in which he emailed or called "co-counsel." Dkt. 215 at 17. These were emails and calls to the entire legal team, as opposed to individual members, whom he specified in other entries. *See, e.g.*, Salem Decl. Attach. A, entries of 7/1/18 through 7/3/18.

[11] As to those 6 hours, it is not duplication for two attorneys to collaborate on preparing key witnesses, edit a brief, or confer. *See* Dkt. 213 at 16-17, 21. Defendants' fault 2.3 hours of Mr. Salem's preparation of Mr. Griffin, but he already discounted it to 0.5. Salem Decl. Attach. A, entry 11/13/18. Neither Mr. Salem's nor Mr. Henderson's time should be further cut for such tasks. Defendants do not claim they used only one attorney for witness prep, and Ms. Campbell billed for calls and emails with co-counsel. Campbell Decl. at 4, 6, 7.

10.1 (emphasis added). Defendants cite no authority for writing off the creation of the appendix. They are billable attorney tasks. Ex. 2, McBride Supp. Decl. ¶ 4.[12]

**C. Mr. Henderson.** Defendants' request to wholly write off Mr. Henderson's work after Mr. Salem joined is based on a whopping misstatement: he "did not present a witness or oral argument at trial." Dkt. 215 at 17. He examined <u>three</u> of Plaintiffs' six witnesses— Mr. Griffin, Ms. O'Connor, and Mr. Carter. Dkt. 167; Trial Tr. 99-122, 272-320. And over strenuous objections, he argued and successfully briefed the admissibility of emails from the Municipal Counselor—among the "troubling evidence of animus against panhandlers" that disturbed the Tenth Circuit. *McCraw*, 973 F.3d at 1070 n. 8; Dkts. 168, 179.

Notably, Mr. Henderson's trial preparation and participation and successful briefing contradicts the claim that Plaintiffs failed to "divide and conquer" or that he was "not necessary." Dkt. 215 at 7, 16. The three senior attorneys each engaged in unique tasks preparing for and conducting trial: Mr. Salem examined three witnesses and cross-examined two; Mr. Henderson examined three; and Prof. Thai orchestrated strategy and actively participated as second chair to ensure the creation of a robust record and preservation of constitutional arguments for appeal. Salem Supp. Decl. ¶ 3. Moreover, Plaintiffs' case at trial, with six witnesses and 45 exhibits, was considerably longer and more complex than Defendants' case, with two witnesses and 21 exhibits. Dkts. 165-67.

Defendants' request to discount Mr. Henderson's entire five years of work—277.5

---

[12] For the same reasons, the characterization of Mr. Salem's and Ms. Lambert's preparation of exhibits as noncompensable clerical tasks is misplaced. Dkt. 215 at 14, 18-19. Ms. Campbell's own invoices billed for "work on exhibit notebooks." Campbell Decl. at 7. Mr. Salem does concede error in recording time totaling 4.6 hours. Salem Supp. Decl. ¶ 2.

hours—by twenty percent based on less than 20 hours of alleged "duplication" (Dkt. 215 at 10 n. 1, 16-17) is wildly overbroad as well as wrong on the merits. *See supra* p. 8 n. 11.

**D. Ms. Lambert And Mr. Beben.** It is arguing heads <u>and</u> tails to claim a failure to "divide and conquer" but then seek to cut all work delegated to junior attorneys. Dkt. 215 at 7, 9-15. Their time is already reduced severely, their low rates incorporate discounts for their level, McBride Decl. ¶ 36, and Defendants do not specifically contest many tasks, including *Daubert* motions, several other pleadings, and supervision of student work.[13]

Defendants make another glaring misstatement. The auto-pedestrian accident reports from Production Request No. 10—which Ms. Lambert was tasked to review at the lowest rate—consists of more than the 14 pages Defendants submit, which only includes the first report. Dkt. 215 at 13 & Ex. 2. They <u>exceed 2000 pages</u>—504 reports summarized by Plaintiffs' Trial Exhibit 31, on which the Tenth Circuit relied. *See McCraw*, 973 F.3d at 1064, 1072; Ex. 1 herein.[14] The 26 hours Ms. Lambert spent reviewing and organizing (and 4.6 combined hours Mr. Henderson and Prof. Thai spent assisting) is reasonable.

Contrary to Defendants' claim, Mr. Beben was necessary. Goodman Decl. ¶ 16.D; McBride Decl. ¶ 35.D. Given his work for Legal Aid and specialized knowledge of homelessness and panhandling, he served as primary counsel to Plaintiffs McCraw and Marshall, helping to shape the claims central to Plaintiffs' success. Beben Decl. ¶ 7.

---

[13] *See, e.g.*, Beben Decl. Attach. A lns. 51, 53, 56 58-59, 62, 69, 122-124, 131-33; Lambert Decl. Attach. A lns. 7, 8, 18, 20, 35, 41, 45, 52, 70-73, 75-82, 85-87, 92-94, 163, 164.
[14] Plaintiffs conventionally filed all 504 reports as Exhibit 57 of its summary judgment motion. *See* Dkt. 106 at 10. Plaintiffs offered them at trial as the voluminous underlying records for Exhibit 31. Trial Tr. 321-22. If this Court wishes, Plaintiffs can refile them.

Respectfully submitted,

*s/ Joseph Thai*
Joseph Thai, OBA No. 19377
P.O. Box 961
Norman, OK 73070
(405) 204-9579
thai@post.harvard.edu

*s/ Micheal Salem*
Micheal Salem, OBA No. 7876
Salem Law Offices
101 East Gray St., Suite C
Norman, OK 73069
(405) 366-1234
msalem@msalemlaw.com

*s/ Megan Lambert*
Megan Lambert, OBA No. 33216
ACLU of Oklahoma Foundation
P.O. Box 13327
Oklahoma City, OK 73113
(405) 525-3831
mlambert@acluok.org

*s/ Brady Henderson*
Brady R. Henderson, OBA No. 21212
Cream City Law, LLC
1123 N. Water St., Suite 400
Milwaukee, WI 53202
(414) 563-7453
brady@creamcity.law

*Attorneys for all Plaintiffs*

*s/ Greg Beben*
Greg P. Beben, OBA No. 22487
Legal Aid Services of Oklahoma, Inc.
2901 N. Classen Blvd., Suite 112
Oklahoma City, OK 73106
(405) 488-6821

11

gregory.beben@laok.org

*Attorney for Plaintiffs*
*Calvin McCraw & G. Wayne Marshall*

**Certificate of Electronic Service**

I certify that, on the day of filing, the foregoing document was electronically transmitted through this Court's ECF filing system to all counsel who have entered an appearance in this case and registered to receive ECF notification via electronic mail.

*s/ Joseph Thai*
Joseph Thai, OBA No. 19377