# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CALVIN McCRAW, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | NO. CIV-16-0352-HE |
| ) | |
| CITY OF OKLAHOMA CITY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **ORDER**

In this case, plaintiffs challenged, on First and Fourteenth Amendment grounds, an Oklahoma City ordinance, and its revision, which banned pedestrian activity on certain city medians. Defendants prevailed in this court, but on appeal the United States Court of Appeals for the Tenth Circuit reversed the judgment in favor of the City on plaintiffs' First Amendment claims and the dismissal of plaintiff Wilson's First Amendment claim. It affirmed as to all other claims.

Plaintiffs have now filed their motion for attorneys' fees and non-taxable litigation expenses, to which defendants have responded and plaintiffs have replied.[1] Plaintiffs seek $1,223,100 in attorneys' fees, plus an enhancement of ten percent for exceptional success.[2] Defendants object to the amount of attorneys' fees requested and, after giving effect to

---

[1] *The Tenth Circuit determined that an award of appellate attorneys' fees was warranted and remanded to this court to determine the appropriate amount of the fee award [Doc. #98].*

[2] *Plaintiffs also request $2,676.56 in non-taxable expenses. Defendants do not object to this request.*

their various objections, contend that a reasonable fee for plaintiffs is $732,640, with no enhancement.

In light of the thorough briefs of the parties and the extensive evidentiary materials submitted along with them, the court concludes a hearing is unnecessary in resolving the present motion.

## **DISCUSSION**

In cases where relief is sought pursuant to Section 1983, "the court, in its discretion, may allow the prevailing party … a reasonable attorney's fee as part of the costs …." 42 U.S.C. § 1988(b). "Although the power to award such fees is discretionary, that discretion is narrow once a civil rights plaintiff demonstrates that he is a 'prevailing party.'" Robinson v. City of Edmond, 160 F.3d 1275, 1280 (10th Cir. 1998) (internal citation omitted). Here, it is undisputed that plaintiffs are the prevailing parties with respect to their First Amendment claims and that those claims were the principal thrust of the case. Defendants do not dispute that plaintiffs are entitled to recover a reasonable attorneys' fee in the present circumstances. Therefore, the only issue to be determined now is what constitutes a reasonable fee. Plaintiffs have the burden to prove that the requested fee is reasonable. See Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc., 295 F.3d 1065, 1078 (10th Cir. 2002).

"To determine the reasonableness of a fee request, a court must begin by calculating the so-called 'lodestar amount' of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a 'reasonable' fee. The lodestar calculation is the product of

the number of attorney hours 'reasonably expended' and a 'reasonable hourly rate.'" Robinson, 160 F.3d at 1281 (internal citations omitted).

A.   Reasonable hourly rate.

Plaintiffs' fee request reflects hourly rates for their counsel ranging from $200 per hour to $500 per hour. Of these rates, defendants challenge only the $500 per hour rate sought by Professor Joseph Thai, lead counsel for plaintiffs.

A reasonable rate is the prevailing market rate in the relevant community. To meet this burden, the claimant must:

> Produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable and is referred to – for convenience – as the prevailing market rate.

Guides, Ltd., 295 F.3d at 1078 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). Defendants contend that Professor Thai's hourly rate of $500 should be reduced to $400.[3] The court concludes, however, that plaintiffs' submissions justify the higher rate. Professor Thai's qualifications, experience, and skill are exceptional, and he is considered one of the leading experts in the country on First Amendment law. Professor Thai's submissions indicate his current paid hourly rate is $500. In addition, plaintiffs have submitted six

---

[3] *Defendants point to a prior case in the Northern District of Oklahoma where a rate of $400 per hour for Professor Thai was approved, but that case was roughly seven years ago and there has been inflation of hourly rates in the meantime.*

declarations from local practitioners who are familiar with the local rates in Oklahoma and with Professor Thai's qualifications, experience, and skill. All six practitioners state that an hourly rate of $500 falls on the low end of an appropriate hourly rate for Professor Thai. The court concludes that plaintiff's evidence, evaluated in light of the court's own experience with prevailing local rates, supports a determination that $500 per hour is an appropriate rate for the time reasonably spent by Professor Thai.

B.  Number of hours reasonably expended.

Plaintiffs' fee request seeks payment for 3014.1 hours of attorney time. Plaintiffs' submissions indicate this amount is net of certain reductions they have made for various reasons. Defendants do not dispute that the various hours were actually spent as claimed by plaintiffs, but argue the hours claimed, even with the adjustments, exceed what should reasonably be paid for by defendants.

Defendants challenge the reasonableness of the time spent on multiple grounds. They challenge the use of five attorneys to handle the case. Specifically, they challenge the use of multiple attorneys to accomplish the same tasks and the presence of multiple attorneys at various hearings or depositions. They challenge the reasonableness of the time spent for various tasks in the case, including attorney conferences and other matters. They also challenge whether tasks were efficiently allocated between counsel to avoid unnecessary expense.

The court does not view the use of five attorneys as necessarily problematic in the context of this case. This litigation was hard fought, involved multiple parties, dealt with relatively involved and complex issues, and stretched over multiple years. Plaintiffs

4

needed and got the assistance of able counsel both at the trial and appellate levels, using a team approach and multiple lawyers.

The case was, however, heavily lawyered beyond just the total number of lawyers involved. Professor Thai was present for, and charged for, a substantial range of pretrial activities which were principally handled by others, including depositions and the trial itself. As lead counsel, he would have needed to maintain familiarity with the progression of the case and his personal presence at most pretrial and trial activities is one way to do that, but a sufficiently expensive one that the opposing party should not be expected to bear the full cost of it. Further, any need to personally and closely monitor the trial throughout was lessened by the fact that the lead counsel for trial, Mr. Salem, is himself a premier First Amendment lawyer. Mr. Henderson is also an experienced and capable First Amendment lawyer.

Professor Thai did personally handle the case on appeal, taking the lead on briefing and arguing it to the Circuit. Judging from the appellate briefs and from the Circuit's enthusiastic embrace of his arguments, it appears clear Professor Thai did an excellent job. However, the court notes the time spent by him on the various tasks was substantial. In particular, his preparation for oral argument appears out of the ordinary. His records indicate he spent over 130 hours drafting questions and answers for oral argument, in addition to time spent on moot oral argument. Although other cases addressing fees for oral argument preparation are of limited guidance, as the nature and complexity of each case is different, they at least suggest the time spent here was unusually high. See Nadarajah v. Holder, 569 F.3d 906 (9th Cir. 2009) (in complex case with unique statutory

5

and constitutional questions, court found attorney reasonably spent 40 hours in preparation for oral argument); American Petroleum Inst. v. U.S.E.P.A., 72 F.3d 907 (D.C. Cir. 1996) (holding that given attorney's familiarity with the case, it would have been reasonable to have spent 80 hours preparing for oral argument); Ustrak v. Fairman, 851 F.2d 983 (7th Cir. 1988) (reducing 38 hours for preparation for oral argument to 22 hours in case with simple facts and legal issues of limited scope and novelty).

Beyond the matter of Professor Thai's personal participation, there was other substantial duplication as to some tasks.  For example, it appears four attorneys participated in the deposition preparation for plaintiff McCraw and three in the deposition preparation for plaintiff Wilson.  There is nothing apparent here that would make that level of attorney involvement necessary.  The various plaintiffs had relatively straightforward stories to tell — a political activist, persons soliciting in roadways, a jogger — such that preparation for a deposition would also be fairly straightforward.[4]   Similarly, three or more attorneys attended at least some of the depositions.  While multiple attorneys might be appropriate for some depositions taken by plaintiffs, such as that of Chief Citty or of some other expert/key witness, it strikes the court as unnecessary to have three or four attorneys present to defend a deposition of one's own client.[5]

---

[4] *The court acknowledges, as pointed out by the Circuit [973 F.3d at 1067], that it previously under-appreciated the First Amendment significance of plaintiff Wilson's "linga franca" with her fellow joggers.  But, even allowing for that, it is not apparent why preparation for her deposition would have involved particular complexity.*

[5] *Several of those depositions were used at trial in lieu of live testimony and the court recognizes that defending a deposition to be used at trial is far from a passive activity.  Still, it does not justify multiple attorneys to accomplish the task.*

The court recognizes that plaintiffs have made some effort to adjust for the duplication. For example, Ms. Lambert excluded from her time request time she spent at certain of the depositions. However, whether such adjustments adequately account for the duplication implicates another objection raised by defendants. Defendants contend that many tasks were performed by lawyers with high hourly rates when, based on the nature of the task, they could have been more efficiently handled by less experienced and less expensive counsel. There is considerable force to the argument. Excluding, for example, the time Ms. Lambert spent (at $200 per hour) at a deposition does not offset the impact of Professor Thai also being there (at $500 per hour), particularly when other attorneys were the ones actively conducting or defending the deposition. Similarly, excluding the trial time of Ms. Lambert, who apparently performed usual "second chair" functions of handling exhibits and the like, does not offset the much higher rate of Professor Thai, whose role at trial was closer to being advisory.

The submissions also indicate multiple instances of basic research or similar tasks (research on <u>Daubert</u>, cite-checking briefs, etc.) being conducted by Professor Thai at $500 per hour which could have been handled by a less expensive member of the team. He expended significant time drafting the complaint and amended complaint in the first instance, doing the same with summary judgment briefing, preparing discovery and discovery responses and the like. The more common manner of handling such matters in a firm setting is for the senior partner (or subject matter expert attorney) to review and revise work done by less senior and experienced attorneys, thus hopefully getting the benefit for the client of both the senior lawyer's expertise and the lower costs associated

with having more junior lawyers handle the more routine aspects. Here, Professor Thai elected to handle himself various aspects of the case which were more routine than the stuff of his special expertise warranting the $500 per hour rate.

Defendants also object to certain time entries on the basis they are for clerical tasks which are not compensable attorney time. Truly clerical tasks are non-compensable. However, preparation of the appendix for the appeal is not a truly clerical task, as the Tenth Circuit specifically requires that the appendix should be prepared by counsel. See 10th Cir. R. 10.1. Making copies, printing documents, and filing pleadings, on the other hand, are in the nature of clerical tasks. Having reviewed the billing records for all counsel, the court concludes that 45.5 hours were spent on clerical tasks and that these hours should be excluded.[6]

The issues as to duplication and the like go as much to the utilization of the overall plaintiff team as to any particular attorney, which makes the appropriate adjustments less easy to calculate. The adjustments are necessarily a judgment call, not purely a math problem. However, using the parties' respective charts as the starting place,[7] and after considering the other attorney-specific issues and objections, the court concludes the time spent by particular attorneys should be adjusted as follows:

---

[6] *This consists of 0.6 hours for Gregory Beben, 22.3 hours for Megan Lambert, 3 hours for Brady Henderson, 15.9 hours for Michael Salem, and 3.7 hours for Joseph Thai. The Henderson time includes one hour for complaint service and press conference/interviews in April, 2016.*

[7] *See plaintiff's fee brief [Doc. #213] at 14 and defendant's exhibit 215-3.*

Professor Thai – The motion seeks payment for 1599 hours as to Professor Thai. The court concludes those hours should be adjusted downward to 1200 hours, to account and adjust for the time spent by him on matters that could have been handled less expensively by a different attorney, the substantial and unnecessary duplication of services as to trial and pretrial proceedings, the exceptional amount of time spent in connection with oral argument, and the minimal amount of time spent on clerical tasks noted previously.[8] The court does not doubt that Professor Thai spent all the time he claims[9] and that the arguably "extra" time or personal handling of routine matters may well have contributed to plaintiffs' success here.  But the question here is essentially what portion of his time/fees should reasonably be shifted to the opposing party, and that requires the adjustments indicated.  As another judge of this court has observed in a somewhat similar context, "A client may choose the 'Cadillac' of law firm representation, but that client is not automatically entitled to have an opposing party make the car payments."  Catholic Benefits Assoc. LCA v. Azar, Case Nos. CIV-14-240-R, CIV-14-685-R, 2018 WL 3876615, at *11 (W.D. Okla. Aug. 15, 2018).  See also American Petroleum, 72 F.3d at

---

[8] *The court recognizes that a downward adjustment of roughly 400 hours is more than the roughly 350 hour adjustment referenced in defendant's chart [Doc. #215-3]. However, the matter of duplication of time spent should necessarily focus on the most expensive lawyers if their participation was not otherwise reasonably required.*

[9] *Professor Thai states in his Declaration that for the entries he included, he frequently adjusted the entry down by at least 10 to 20 percent.  In contrast to Mr. Salem's time entries, Professor Thai's entries do not show the actual amount of time spent.  Without this information, the court is unable to take these reductions into consideration when making its determination of reasonableness.*

916 (senior partner billing for most tasks is not unreasonable as between a first class law firm and a solvent client, but is not necessarily chargeable to the opposing party).

Michael Salem – Plaintiffs seek reimbursement for 527.6 hours as to Mr. Salem, who was lead trial counsel on the case. Contrary to defendants' suggestion, Mr. Salem did not engage in improper block billing, but instead evidenced his time with detailed descriptions and specific time amounts for each increment. Further, Mr. Salem significantly discounted most of his time entries, often by more than twenty percent. Apart from the 15.9 hours for clerical tasks previously noted and a 4.6 hour recording error conceded in plaintiffs' reply brief, no further adjustment is warranted. The court concludes Mr. Salem reasonably expended 507 hours in connection with the case.

Brady Henderson – Plaintiffs seek recovery for 277.5 hours of Mr. Henderson's time. He was apparently the expected trial counsel in the early years of the case, later replaced as such by Mr. Salem after relocating, but who also actively participated in the trial with Mr. Salem. The court concludes a downward adjustment of 20 hours, based on duplication at depositions/prep, is warranted, as is the adjustment for clerical tasks noted above. It further concludes his time records were sufficient as against block billing concerns. Mr. Henderson reasonably spent 254.5 hours in connection with the case.

Megan Lambert – Plaintiffs indicate Ms. Lambert spent 463.7 hours working on the case, after excluding certain time from the calculation.[10] As defendants note, some of Ms.

---

[10] *Ms. Lambert's time excludes time she spent attending the depositions in the case, but includes time spent in preparing some of the witnesses, usually with one or more other attorneys. She also excluded time for the weekly conferences with other counsel.*

Lambert's time entries suggest excessive amounts of time spent on particular projects (e.g., eight hours drafting a motion to set trial date; nine hours researching whether adoption of a new ordinance mooted plaintiffs' claim).  In sum, the court concludes such amounts warrant a 20 hour reduction.  The concerns with duplication of services with other attorneys are, as to Ms. Lambert, sufficiently addressed by the time she has excluded from the computation.  The 20 hour reduction, plus the 22.3 hours for clerical matters, results in a determination of 421.5 hours reasonably spent.

    <u>Greg Beben</u> – Plaintiffs seek reimbursement for 146.2 hours spent by Mr. Beben.  As with Ms. Lambert, Mr. Beben has excluded significant hours which he indicates he spent.  However, defendants nonetheless challenge whether any of Mr. Beben's time was really necessary in light of the services provided by other counsel.  The question is reasonable, given the roles played by the other lawyers and the relative lack of detail in Mr. Beben's time records to show exactly what he was doing.  However, the court concludes the inclusion of Mr. Beben's time is warranted at least in part, given that he had the pre-existing relationship with some of the plaintiffs who were homeless or at least less comfortable with court proceedings than might otherwise have been the case.  As a result, he was better positioned to provide at least some of the services directed to dealing with those plaintiffs.  The court will, however, reduce his request by 22 hours based on block billing or vagueness concerns, by 20 hours for unnecessary duplication, and by 12 hours

spent in connection with the appeal to the Tenth Circuit.[11] The court concludes Mr. Beben reasonably spent 91.6 hours on the case.

The Lodestar calculation – Applying these hours expended to the hourly rates agreed to or (as to Mr. Thai) determined above, the court calculates the lodestar amount as follows:

| Attorney | Hourly rate | Hours spent | Fee |
|---|---|---|---|
| Thai | $500 | 1200 | $600,000 |
| Salem | $400 | 507 | $202,800 |
| Henderson | $300 | 254.5 | $76,350 |
| Lambert | $200 | 421.5 | $84,300 |
| Beben | $250 | 91.6 | $22,900 |

The result is a total lodestar fee of $986,350.

C. Enhancement.

Plaintiffs assert they are entitled to a ten percent fee enhancement for "exceptional success."

> The Court in *Hensley v. Eckerhart* [461 U.S. 435 (1983)] acknowledged that an enhanced fee award could be made in cases in which the success achieved was exceptional. We think the Court does not foreclose enhancement above that given for an "excellent result" in cases in which plaintiff did not win on all issues. "Exceptional success" justifying an enhanced fee may be based upon the performance of counsel – for example, victory under unusually difficult circumstances or with an

---

[11] *This makes some allowance for time spent communicating with clients as to the status of the case, but excludes time that appears thoroughly duplicative of the appellate work of Mr. Thai, et al.*

12

> extraordinary economy of time – or upon the result achieved –
> total victory or establishment of significant new law.

Ramos v. Lamm, 713 F.2d 546, 557 (10th Cir. 1983).

An enhanced fee is not warranted in this case. While plaintiffs fully prevailed in a relatively complicated First Amendment case, and their attorneys' services were of excellent quality, this is not a situation where exceptional results were achieved with an extraordinary economy of time. To the contrary, the fee based on a pure lodestar calculation is very substantial and amply compensates plaintiffs and their counsel without enhancement. Further, the court is unpersuaded that the result of the litigation was to establish some significant new principle of law. As the court noted in its December 19, 2018 Order, most courts had previously concluded (as did this court as to a substantial number of the medians at issue here) that public medians ordinarily qualify as traditional public fora. See December 19, 2018 Order [Doc. #180] at 14-15. In any event, the court concludes that the indicated fee fairly compensates plaintiffs' counsel for their efforts, is substantial enough to encourage attorneys to undertake representation in public interest cases like this one, and is reasonable under the circumstances.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Litigation Expenses [Doc. #213] is **GRANTED** as follows: plaintiffs are awarded their reasonable attorneys' fees in the amount of $986,350 and non-taxable expenses in the amount of $2,676.56.

**IT IS SO ORDERED**.

Dated this 23rd day of August, 2021.

JOE HEATON
UNITED STATES DISTRICT JUDGE